## Commonwealth, etc., Co., Appellant, v. Folz.

*Statute of limitations—Principal and agent—Giving money to another to pay to a third.*

If money be placed by one person in the hands of another, to be paid to a third, the latter may recover it by an action against the second. In the absence of any qualifying condition, the right of action accrues upon the receipt of the money by the intermediary, and the statute of limitations then begins to run. This is so, even though the beneficiary is ignorant of the transaction. And where the depositor has, from the date of the deposit, a right to recall the money before it reaches the beneficiary, his right of action accrues at that date, and the statute then begins to run against him. Since the statute runs against a beneficiary ignorant of his title, a fortiori it must run against a depositor with full knowledge of it. That the latter neglects to ascertain whether the duty intrusted to the intermediary has been performed, the means of discovery being within his reach, cannot affect the operation of the statute.

An attorney for vendors of real estate deposited with a title insurance company certain money for the payment and satisfaction of mortgages on the real estate, the title to which the company was about to insure. Subsequently the company gave a portion of the fund to the attorney as its agent to be used in satisfying two mortgages. One of the mortgages was not due, and the holder refused to satisfy it. The attorney thereupon turned the balance of the fund in his hands over to the vendors. This was done without the knowledge of the company, and it remained in ignorance of the fact that the mortgage was not satisfied for over seven years, when it was compelled to pay the mortgage under its contract of insurance. The company then sued the attorney who pleaded the statute of limitations. At the trial it was shown that none of the company's officers knew that the mortgage was not satisfied, but it appeared that the company had in its title plant a book in which were noted all incumbrances not satisfied at the time of settlement, as to which satisfaction

was to be entered.  *Held*, that the statute of limitations applied, and ran from the date of the payment of the money to the attorney.

Argued Oct. 7, 1903.  Appeal, No. 241, Oct. T., 1902, by plaintiff, from order of C. P. No. 1, Philadelphia Co., June T., 1900, No. 849, dismissing exceptions to report of referee in case of Commonwealth Title Insurance and Trust Company v. Leon H. Folz.  Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ.  Affirmed.

Exceptions to report of C. Berkeley Taylor, Esq., referee.

The referee reported as follows:

Plaintiff's action was brought to recover a sum of money intrusted to defendant for the purpose of paying off and having satisfied a mortgage of $1,000 upon premises 2065 Birch street, Philadelphia, which defendant failed to do.

The defense was twofold: first, that defendant acted in the matter as attorney for C. C. and J. C. Moore, and was not responsible, having paid the money to his principals, and, second, that the action was barred by the statute of limitations.

### FINDINGS OF FACT.

In March, 1892, application was made by Wallace S. L. Rhoads to plaintiff for title insurance upon four properties, 2065, 2067, 2069, and 2071 Birch street.  The applications for title insurance were numbered 17,042 and 17,043.  When the title was examined three mortgages appeared, one for $2,500 upon, inter alia, 2071 Birch street; one for $2,000 upon 2067 and 2069 Birch street, and one for $1,000, dated February 2, 1892, and payable three years thereafter, upon 2065 Birch street.  In order that a conveyance might be made, the mortgages not being due, defendant, an attorney at law, representing C. C. and J. C. Moore, the vendors, arranged with plaintiff to deposit with it $5,500, and that being done, plaintiff insured the title to the properties clear of the mortgages.  At the time of the payment to plaintiff of the sum of $5,500, defendant delivered to it the following paper:

"PHILADELPHIA, Apr. 14, 1892.

"I agree to secure the satisfaction or release of the mort-

gages mentioned in the settlement certificates Nos. 17,042 and 17,043, and upon that being done, which it is understood will be within one month, the money, $5,500, deposited with this Company to be returned to me as Attorney for C. C. and J. C. Moore.

"LEON H. FOLZ."

This paper and the transactions following it give rise to the present controversy.

Shortly after the date of the above paper a release was obtained for the $2,500 mortgage, and as much of the money deposited as was not used to obtain this release was returned to the defendant by the plaintiff. William Brooke Rawle, who was the holder of the other three mortgages, was out of the city during the summer of 1892, so nothing was done toward the release or satisfaction of those mortgages until the fall. Upon November 9, 1892, plaintiff paid to Leon H. Folz, attorney, $2,980, in the presence of his client, C. C. Moore, being the balance of $3,000 in its hands, less its charges, for the purpose of paying and having satisfied the mortgages of $2,000 and $1,000 remaining on the properties 2065, 2067, and 2069 Birch street.

It is found as a fact that this money was paid to and accepted by defendant for the purpose of paying and having satisfied the mortgage of $2,000 upon premises 2067 and 2069 Birch street, and the mortgage of $1,000 upon 2065 Birch street, and that in doing this defendant was the agent of plaintiff, intrusted with the money for that purpose.

The fact that defendant had been acting as attorney for the vendors in the transaction and that the check for $2,980 was drawn to his order as "attorney" does not militate against this conclusion. His client was present, to whom the check could have been drawn had it been intended to intrust him with the money. The payment was in line with defendant's agreement of April 14, 1892, and was the only practical way of accomplishing that agreement.

The $2,000 mortgage upon 2067 and 2069 Birch street was satisfied December 2, 1892, and the satisfied mortgage produced to plaintiff on December 3, 1892.

It is found as a fact that defendant accounted to C. C. and

J. C. Moore for the whole amount of $2,980 paid to him by plaintiff on November 9, 1892, prior to the year 1899.

It is further found as a fact that C. C. Moore continued to pay the interest on the $1,000 mortgage upon 2065 Birch street to William Brooke Rawle until his, Moore's, death, the last payment being made September 13, 1898. That subsequently the interest having fallen in arrear the principal was demanded, and on October 24, 1899, the plaintiff, in order to make good its insurance of the title of the premises free of incumbrances, paid to William Brooke Rawle, attorney for the estate of Sally Pepper Norris, the principal and accrued interest, namely, $1,063, and the same was duly satisfied of record.

On May 27, 1899, plaintiff notified defendant that the above mortgage had not been satisfied, and demanded that he should procure its satisfaction. Defendant at interviews with the officers of plaintiff at dates later than May 27, 1899, claimed that he had paid over all moneys received by him in this and other transactions to C. C. and J. C. Moore, and refused to either pay the money back or have the mortgage satisfied.

It appeared that the plaintiff was engaged in the business of insuring titles to land in the city of Philadelphia and had a title plant which showed all deeds and mortgages upon land in said city and the dates of the satisfaction of mortgages, and that at any time any officer of the company could have discovered by an examination of the plant that the $1,000 mortgage upon 2065 Birch street had not been satisfied.

It also appeared that about November 3, 1893, plaintiff commenced to keep a book in which was noted all mortgages or incumbrances that were not satisfied at the time of settlement and as to which satisfaction was to be entered.

It further appeared that none of the officers of the plaintiff connected with the title department actually knew that this mortgage was still unsatisfied until the demand for payment thereof was made by William Brooke Rawle early in 1899.

### CONCLUSIONS OF LAW.

In view of the finding of fact that defendant received the sum of $2,980 as agent of the plaintiff clothed with the duty of using it for the purpose of procuring the satisfaction of the

two mortgages of $2,000 upon 2067 and 2069 Birch street, and the mortgage of $1,000 upon 2065 Birch street, and that he did not procure the satisfaction of the $1,000 mortgage, the first ground of defense, namely, that defendant acted throughout as agent for C. C. and J. C. Moore, cannot prevail.

The second ground of defense was that the action was barred by the statute of limitations.

It appeared that more than six years elapsed between the payment of the money to defendant on November 9, 1892, and the demand for its application on May 2, 1899, in accordance with the agreement entered into upon its receipt.

It further appeared that plaintiff had no actual notice of the failure of defendant to carry out the duty imposed upon him during that time.

No evidence was offered to show any act of concealment on the part of defendant unless the payment of interest to the holder of the mortgage by C. C. Moore during his lifetime can be construed as such, and the referee is entirely unable to see how the default of C. C. Moore can be used to hold defendant liable without some evidence of defendant's knowledge of the facts or participation in the fraud which does not appear.

The fact that the $1,000 mortgage upon 2065 Birch street was not due until February 2, 1895, and therefore payment could not be compelled until a time within the statute, does not prevent the running of the statute from the date of the payment of the money to defendant. This results from the agreement under which the money was received, namely, that defendant was to procure the satisfaction or release of the mortgages. That was a present act to be performed within a reasonable time, fixed by the earlier agreement at thirty days.

The main reply of the plaintiff to the statute was that it did not apply to a trust; that statement, however, would seem to be too broad. The earlier Pennsylvania cases following Chancellor KENT, 7 Johns. Chan. Rep. 90, say: " That the cases of trusts not to be reached or affected in equity by the statute of limitations are those technical and continuing trusts which are not cognizable at law but fall within the proper, peculiar, and exclusive jurisdiction of chancery:" Lyon v. Marclay, 1 Watts, 271, 275; Finney v. Cochran, 1 W. & S. 112, 119; Barton v. Dickens, 48 Pa. 518, 522, but the later decisions seem to indi-

cate that the cases in which the statute cannot be pleaded are where some relation of trust and confidence exists imposing a duty to give information.   Judge GREEN, in Sankey v. Mc-Elevey, 104 Pa. 265, says : " But even in courts of equity we apprehend that there must be some relation of trust and confidence between the parties imposing a duty to give information or some affirmative act of fraud something more than mere silence, which will suffice to defeat the operation of the statute, where the basis of the reply to the statute is concealment of the cause of action."   This clause of the opinion is quoted with approval by Mr. Justice MITCHELL in the very late case of Smith v. Blachley, 198 Pa. 173.   See also Fox v. Cash, 11 Pa. 207.

The difficulty of applying Chancellor's KENT's rule in Pennsylvania arises out of our mixed system, where equity was originally administered under common-law forms.

The present case, although a trust, is not one in which a confidence exists imposing a duty to give information.   In Lyon v. Marclay, supra, where money was paid over to defendant's testator for the use of his grandchild, and the evidence was that he declared he held it for her, the statute was pleaded and prevailed, Ross, J., saying : " But a person who received money to be paid to another or to be applied to a particular purpose, and does not pay it to the person or apply it to the purpose intended, is a trustee, and suable either in law or equity.   Yet such cases are not without the operation of the statute of limitations under the notion of a trust, although they are cases of express and direct trusts."   See also Finney v. Cochran, 1 W. & S. 112.

In Hostetter v. Hollinger, 117 Pa. 606, where certain moneys were paid by two of the sons of John Hostetter to a third son, Henry Hostetter, for the use of Maria Bear, it was held that the statute of limitations was a bar to an action to recover the amount, although no denial was made of the trust relation. Judge CLARKE said : " It may be conceded that the obligation of Henry Hostetter to Maria Bear was in the nature of a trust, but the remedy for recovery of the money was at law, and the trusts which are not affected by the statute of limitations are only those technical and continuing trusts over which chancery has exclusive jurisdiction.   A person who receives money to be paid to another or to be applied to a particular purpose, and

does not pay it to the person or apply it to the purpose intended, is within the operation of the statute of limitations." Such a technical and continuing trust as Judge CLARKE refers to may be found in Bear's Estate, 9 Pa. Superior Ct. 492.

The statute of limitations does not apply in cases where it would be impossible for the party injured to know that his rights were being invaded, as in Lewey v. Coke Co., 166 Pa. 536, where the defendant trespassed upon plaintiff's land by working his way through coal seams underlying adjoining lands. See also Bank v. Forster, 8 Watts, 12; but in Scranton Gas & Water Co. v. Lackawanna Iron & Coal Co., 167 Pa. 136, where the evidence showed that the plaintiff under a water contract had a right to go upon defendant's property at any time and inspect the use made of the water, Judge WILLIAMS said: "The question in any given case is not what did the plaintiff know of the injury done him, but what might he have known by the use of the means of information within his reach with the vigilance the law requires of him."

In the present case the evidence disclosed that at any time and at all times after the payment of the money to the defendant, the officers of the plaintiff company might have discovered by an examination of the plaintiff's title plant that the $1,000 mortgage upon 2065 Birch street had not been satisfied; under these circumstances they did not use the means of information within their reach, and the mere silence of the defendant without any overt act to deceive the plaintiff will not toll the statute.

Judgment must therefore be entered in the cause for the defendant.

The court overruled exceptions to report of referee.

*Errors assigned* were in dismissing exceptions to report of referee.

*M. Hampton Todd,* for appellant.—The right of action by the plaintiff against the defendant cannot be held to have accrued earlier than February 2, 1895, the date at which the mortgage in question matured, and the earliest date on which the defendant could have compelled the holder of the mortgage to accept payment thereof.

The plaintiff had six years within which to bring suit, after demand on and refusal by the defendant to apply the money with which he was intrusted to the satisfaction of the mortgage in question : Baily v. Shroyer, 1 Atl. Repr. 717.

The statute of limitations did not begin to run until the plaintiff's discovery of the misappropriation by the defendant of the money with which he had been intrusted to procure the satisfaction of the mortgage in question : Smith v. Blachley, 198 Pa. 173 ; Johnston v. Humphreys, 14 S. & R. 394 ; Fox v. Cash, 11 Pa. 207 ; Bank v. Forster, 8 Watts, 12 ; Lewey v. Coke Co., 166 Pa. 536 ; Ferris v. Henderson, 12 Pa. 49 ; Marsden's Appeal, 102 Pa. 199 ; Bricker v. Lightner's Exr., 40 Pa. 199.

*David J. Myers*, with him *Stanley Folz*, for appellee.—The relation between the appellant and appellee was found by the referee as a fact to be that of principal and agent, and not that of indemnitor and indemnitee. Consequently the authorities cited in parts 1 and 2 of appellant's argument are inapplicable, and the appellant's first and second propositions cannot be sustained : Evans v. See, 23 Pa. 88.

The running of the statute of limitations prior to the time of discovery by the plaintiff of the defendant's failure to appropriate the money to the satisfaction of the mortgage, was not tolled by any fraud, concealment or express trust : Sankey v. McElevey, 104 Pa. 265 ; Kane v. Bloodgood, 7 Johns. (N. Y.) Chan. 90 ; App v. Dreisbach, 2 Rawle, 287 ; York's Appeal, 110 Pa. 69 ; Hostetter v. Hollinger, 117 Pa. 606 ; Key v. Gordon, 12 Mod. Rep. 521 ; Lyon v. Marclay, 1 Watts, 271 ; Zacharias v. Zacharias, 23 Pa. 452.

Nor was there any fraudulent concealment of the cause of action by the defendant to prevent the operation of the statute of limitations : Guarantee Trust, etc., Co. v. Farmers', etc., Nat. Bank, 202 Pa. 94 ; Smith v. Blachley, 198 Pa. 173 ; Taylor v. Hammell, 201 Pa. 546 ; State Hospital v. Phila. Co., 205 Pa. 336 ; Franklin v. Franklin, 22 Pa. Superior Ct. 463 ; Noonan v. Pardee, 200 Pa. 474.

OPINION BY SMITH, J., November 16, 1903 :

If money be placed by one person in the hands of another,

to be paid to a third, the latter may recover it by an action against the second. In the absence of any qualifying condition, the right of action accrues upon the receipt of the money by the intermediary, and the statute of limitations then begins to run. This is so, even though the beneficiary is ignorant of the transaction: Hostetter v. Hollinger, 117 Pa. 606. And where the depositor has, from the date of the deposit, a right to recall the money before it reaches the beneficiary, his right of action accrues at that date, and the statute then begins to run against him. Since the statute runs against a beneficiary ignorant of his right, a fortiori it must run against a depositor with full knowledge of it. That the latter neglects to ascertain whether the duty intrusted to the intermediary has been performed, the means of discovery being within his reach, cannot affect the operation of the statute: Lewey v. H. C. Frick Coke Co., 166 Pa. 536.

In the case before us, it is a finding of fact, not questioned by the appellant, that the relation between the plaintiff and the defendant, when the money was placed by the former in the hands of the latter, was that of principal and agent. At any time before payment by the defendant to the mortgage creditor, the plaintiff had a right to revoke the agency and recall the money. It was the duty of the agent to use the money as directed, or return it to the principal. Though this duty was in the nature of a trust, it was but a constructive trust, involving only the payment of a fixed sum, and an action for its recovery, by either the principal or the mortgage creditor, was clearly within the statute of limitations. As against both, in the absence of any qualifying circumstance, or fraudulent concealment, the statute ran from the agent's receipt of the money, and here the referee finds no such circumstance or concealment. The plaintiff's ignorance of the defendant's breach of duty was due to laches, since an examination of the record would have shown that the mortgage remained unsatisfied. In addition to this, it is a finding of fact that the plaintiff, in the conduct of its business, kept a " title plant," showing all mortgages on lands in the city, with date of satisfaction, and also a book in which were noted all incumbrances not satisfied at the time of settlement, as to which satisfaction was to be entered. It is a further finding of fact that part of the money placed in the

defendant's hands was to satisfy another mortgage of $2,000, and that, less than a month later, this was satisfied and the satisfied mortgage shown to the plaintiff. The failure to show, in like manner, satisfaction of the $1,000 mortgage, should in the natural course of business have led to inquiry on the subject, through which the plaintiff would have learned of the defendant's breach of duty.

While the money was received by the defendant November 9, 1892, the mortgage which remained unsatisfied was not due until February 2, 1895. It does not appear, from the findings of fact, when satisfaction was to be obtained. It does appear, however, that other mortgages not due were satisfied, and from an earlier agreement on the subject, between the plaintiff and the defendant, it may be inferred that the holder of this mortgage was willing to accept present payment. It certainly seems improbable that the plaintiff proposed to forego the use of the money for more than two years, by leaving it in the defendant's hands to be paid on the maturity of the debt. On this point the declaration avers that the money was placed in the hands of the defendant on the express trust and confidence that he would forthwith appropriate the same in payment and satisfaction of the mortgage. As against the plaintiff, at least, we may accept this statement of the time fixed for performance by the defendant; and this leaves no doubt respecting the time at which the statute of limitations began to run.

Cases in which, on a sale of land, the payment of an incumbrance is assumed by the vendee, who makes default, and the vendor, more than six years afterward, is required to pay it, are clearly distinguishable from the case in hand. While a principal may revoke the authority given to an agent, and recall the money before its payment to the beneficiary, a vendor has no corresponding power over the purchase money retained by the vendee to meet an incumbrance. He cannot rescind the agreement under which this money is held, and demand its payment to himself; nor, until he has been required to pay the incumbrance, can he demand reimbursement by the vendee. He has no right of action against the vendee until such payment, and the statute of limitations runs only from its date.

Judgment affirmed.