## Julius Lewey, Appellant, *v.* H. C. Fricke Coke Company.

*Mines and mining—Statute of limitations—Trespass—Equity.*

In an action of trespass to recover damages for the unlawful mining of coal under plaintiff's land, the equitable rule that the statute of limitations shall run only from discovery, or a time when discovery might have been made, should be applied.

As equity is administered in Pennsylvania through the common law forms of action, the plaintiff should not be turned out of a court of law in order to be admitted at the equity side of the same court. He may, therefore, in an action of trespass for illegal mining, recover compensation in the same manner that he would on a bill for an account.

In such a case the jury should be instructed that, while the statute of limitations may be available as against the penal consequences of the trespass, it is not available as a defence against payment for the coal actually taken and converted to the use of the defendant.

It seems that even in law the statute of limitations runs against an injury committed in or to a lower stratum, only from the time of actual discovery, or the time when discovery was reasonably possible.

Argued Oct. 2, 1894. Appeal, No. 46, Oct. T., 1894, by plaintiff, from judgment of C. P. Westmoreland Co., Aug. T., 1892, No. 123, on verdict for defendant. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed. MITCHELL, J., dissents.

Trespass for illegal mining of coal.

Plaintiff in his statement of claim averred that defendant had entered into and under the surface of plaintiff's land, and, disregarding plaintiff's rights, had mined and converted to its own use coal to the value of thirty thousand dollars.

Defendant pleaded not guilty, and at the trial claimed that the case was barred by the statute of limitations. The evidence showed that the coal was mined in 1884. Evidence for the plaintiff tended to show he had no knowledge of the mining until 1891.

The court charged in part as follows:

"In regard to the coal, the defendant does not deny that it mined and carried away the coal under this particular property. It alleges that it was permitted to go through this coal, and it denies that it was guilty of any wrongful act in this

respect, because such license was obtained. At any rate, there is no dispute that the defendant took away the coal, and no dispute that it was in 1884. There seems to be little dispute as to the amount of coal taken. The plaintiff contends—you will remember the testimony of Mr. Long—that there were 4500 bushels of coal, and the defendant, on the other hand, alleges that there were about 4000; and under the act of assembly, which was passed for a case like this, the plaintiff claims the three-fold value of that coal. The evidence is that the coal was worth three and a half cents a bushel; that would be the value, less the cost of taking it to the mouth of the pit.

" [The trouble with this branch of the case, as we understand it, is in regard to the statute of limitations. That is an act of assembly passed in this commonwealth many years ago. It has received the sanction of the courts, and must be applied wherever it can be applied. It stands upon the statute book, and it provides in plain terms that no action of trespass shall be maintained after six years from the time the cause of action arises—six years after the trespass is committed. On the theory that the plaintiff adopts, the defendant went on this property and carried away this coal, and if suit had been brought in proper time the defendant would have been liable to pay three times the value of this coal. But according to the summons the suit was brought on the 18th day of May, 1892. That was considerably more than six years after the cause of action accrued. So that, so far as the coal is concerned, this action cannot be maintained. If the cause of action accrued in 1884, without considering whether Mr. Lewey has properly brought the suit, or whether he ought to have joined Mr. Trimmer, we think the statute of limitations is a bar to recovery on this branch of the case.

" In regard to the destruction of the well of water in 1891, the plaintiff alleges that this injury was occasioned by the same trespass; that is, the trespass of 1884. There is no evidence of any other trespass, of any other mining going on under the Lewey property after that time, and while the cause of action accrued in 1884, undoubtedly the defendant would be liable for any other trespass on the property of Mr. Lewey or any damage occasioned, but it is not alleged in the declaration that there was any trespass after that time that occasioned these injuries.

The theory of the plaintiff is, that the original trespass, the taking out of this coal in 1884, occasioned the falling down of the smoke-stack and some other injury to the building in September, 1891; there was no very serious injury to either the building or smoke-stack at that time. The matter most complained of is this well. It is alleged that it was valuable, and it totally failed in 1891. As it appeared from the pleadings and the evidence, the contention is that this is one of the consequences of the original trespass in 1884, and we think likewise the statute of limitations would be a bar. For any trespass you can have but one action; you must include in that past, present and future damages—is the general rule that applies to all actions of this kind. Such is our view of the law, and hence we say, as to this branch of the case, the plaintiff is likewise met with the statute of limitations, which prevents a recovery.

"In regard to this well, there is a serious contention of fact. It appears that the trespass was committed in 1884; there is no allegation that there was any trespass after that time. According to the testimony of the plaintiff, there was no diminution of the water, no indication of the failure of water, from 1884 to 1891. It was used constantly, or nearly so. At one time he bought water from the water company at that place; but the well water was used for the purpose of running his mill uninterruptedly, or, with slight interruption, from 1884 to 1891. At that time it failed; failed rather suddenly. The theory of the defence is, that they were then mining their own coal, the coal they had a title to there, on the northeast of the Lewey property. This entry, as we understand it, ran through the southwest corner of the Lewey property, about 60 or 65 feet from where this well was located.

"All of the experts called in this case agree, and their testimony is undisputed. And even if the case had been submitted to you, we should have felt constrained to say that from the lay of the ground, the natural formation of the strata there, it was an impossibility that the opening of this heading on the southwest corner of that lot could have drained the well, or affected it in any way; and that the contention of the defendant is, that the well having continued there for a long lapse of time, from 1884 to 1891, conclusively demonstrates that such

theory is correct. The defendant claims that it was mining the coal in its own land, and that it had a right so to do; and if it did that without negligence it would not be responsible for damages occurring. The defendant's theory is, that from the structure of the overlying rock, the dip of the land, the source of supply for this well was northeast of where the well was located; that this coal was mined in the years from 1885, 1886, up till 1890, or 1891, when the ribs were taken out, and when there was a falling in of the rocks in that locality, and about that time this well failed. If such were the fact, of course there ought to be no liability.

" This we mention incidentally, as, if the case had been submitted to you, it would have been a question for you to determine whether the taking of this water was caused by the trespass of 1884, or whether the water failed by reason of the digging of the defendant's own coal from 1885 to 1891. Although at the same time, as we have already said, without interfering with your province, the court would have felt like indicating to you, that under the uncontradicted testimony in the case, and considering the long lapse of time, it would seem to look very much as if no injury to the well or building could have been occasioned by the driving of this entry seven years before.

"But we hold as matter of law that the plaintiff has no right to recover, and we take it that it is your duty to render a verdict in favor of the defendant. This is a question of law altogether, and if there is any error upon the part of the court we may have an opportunity to review our action and further consider the matter. At any rate, an error of this kind can readily be corrected and no injury done to either party." [8]

Plaintiff's points were as follows :

"1. Under the evidence the title to the premises was in the plaintiff at the time the trespass was committed, and the plaintiff was in possession of the same. *Answer:* Refused." [1]

"2. Defendants have failed to show any title which would justify them in entering upon the lands of the plaintiff and in removing the coal therefrom. *Answer:* Refused." [2]

"3. The defendants having admitted that they knew they were taking the coal under the Lewey premises, and that others than W. J. Hitchman were in possession of the same and operating a facing mill thereon, the defendants are liable to the

plaintiff in three times the value of the coal taken by the defend-
ants and converted to their own use. *Answer :* Refused." [3]

" 4. We instruct you as a matter of law that the injuries to
the plaintiff's property by reason of the taking of the plaintiff's
coal by the defendant, if any, were permanent in their character,
and the proper measure of damage is the difference in the value
of the property before and after the injuries were inflicted.
*Answer :* Refused." [5]

" 5. We instruct you that the trespass complained of amounts
to a secret fraud, and the statute of limitations does not begin
to run until the fraud is discovered. *Answer :* Refused." [6]

" 6. The injury complained of being a pure tort, the plaintiff
was not bound to know when his land was undermined ; and
the statute of limitations will not operate in favor of the defend-
ant until six years have elapsed from the discovery by the
plaintiff of the injury done. *Answer :* Refused." [7]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–7, 8) above instruction, quoting it.

*V. E. Williams, A. M. Sloan, W. A. Griffith* and *Atkinson
& Peoples* with him, for appellant.—The statute should not
begin to run from the commission of the act, but only from the
time of its discovery : Mitchell v. Buffington, 10 W. N. C. 361.

The law is not so tenderly solicitous about the interests of
tort-feasors as to presume that the injured party had notice of
their wrongful acts when in fact he had none : Byles on Bills,
133 ; Lord v. Goddard, 13 Howard, 211 ; 2 Parson on Con-
tracts, 769 ; 1 Story Eq., sec. 186 ; Fenner v. Dickey, 1 Flip-
pen, 36 ; Anderson's Law Dic. (Fraud).

When there has been no negligence on the part of the plain-
tiff in coming to the knowledge of the fraud, and when the
fraud has been concealed, or is of such a character as to have
concealed itself, the statute does not begin to run until the
fraud is discovered : Bailey v. Glover, 21 Wall. 347 ; U. S. v.
Beebe, 127 U. S. 347 ; Angell on Lim. 25 ; Gandolfo v. Hood,
1 Pears. 269 ; Hamilton v. Hamilton, 18 Pa. 20 ; Funk v. Smith,
66 Pa. 27 ; Wheatley v. Baugh, 25 Pa. 528 ; Riddle v. Murphy,
7 S. & R. 230 ; McDowell v. Potter, 8 Pa. 189 ; Bank v. Fors-
ter, 8 W. 16 ; Pennock v. Freeman, 1 W. 401 ; Ferris v. Hen-

derson, 12 Pa. 49; Jones v. Conoway, 4 Y. 109; City v. Brown, 19 Phila. 379; Hughes v. Bank, 110 Pa. 428; Morgan v. Tener, 83 Pa. 305; Wickersham v. Lee, 83 Pa. 416; Colliery Co. v. Mitchell, L. R. 11 App. Cases, 127; 13 Am. & Eng. Ency. of Law, 723; Jones v. Wagner, 66 Pa. 429; Horner v. Watson, 79 Pa. 242; Coleman v. Chadwick, 80 Pa. 81; Carlin v. Chappel, 101 Pa. 348; Williams v. Hay, 120 Pa. 485.

*James S. Moorhead, John B. Head* with him, for appellee.— All the cases seem to require either an averment of fraud in the narr, or a replication setting it up, when the statute of limitations is pleaded: Harrisburg Bank v. Forster, 8 Watts, 12; Ferris v. Henderson, 12 Pa. 49; Mitchell v. Buffington, 10 W. N. C. 361; Binney v. Brown, 116 Pa. 169.

In Owen v. Western Saving Fund, 97 Pa. 47, which was an action for a false certificate of search, it was held that the statute ran from the date of the certificate and not from the development of the damage.

In Sankey v. McElevey, 104 Pa. 265, it was held that the relation of debtor and creditor is not one of trust and confidence, so as to make it the duty of the debtor to disclose the fact or amount of his indebtedness, and that mere silence or concealment will not toll the running of the statute of limitations.

The courts have always viewed with favor the statutes regulating the limitations of actions.

OPINION BY MR. JUSTICE WILLIAMS, March 11, 1895:

The legal question on which this appeal depends is beset with difficulty. The interests to be affected by it must increase in magnitude as the value of the minerals, in which this state abounds, increases. It is not directly ruled by any of our own cases and we are at liberty to treat it as a question of first impression. The facts are not in dispute. The plaintiff is the owner in fee simple of a lot of land lying in the outskirts of the borough of Connellsville containing about one acre and a quarter. This lot is underlaid with coal which has not been severed from the surface by lease or sale and which the plaintiff has made no effort to mine or remove. The defendant company owns a considerable body of coal lands in the same neigh-

borhood which adjoins and practically surrounds the plaintiff's land, and is engaged in mining and removing its coal through openings upon its own lands.

In 1884 in the progress of its mining operations the defendant company made an opening or passageway through the plaintiff's coal under one corner of his lot, which was from seventy-five to one hundred feet in length, about six feet in height, and eight to nine feet wide. The coal removed, amounting to more than four thousand bushels, was brought to the surface through the defendant's pits or openings on its own lands and used or disposed of as its own. The plaintiff had no knowledge of the trespass upon him or the removal of his coal and no means of knowledge within his reach. In 1891, some seven years after his coal was taken, as he alleges, he first became aware of his loss. In the following year he brought this action, and is met with the statute of limitations as a defence. The contention is that it began to run in 1884 when the coal was taken and had barred his remedy one year before he knew that a cause of action had accrued. The court below so ruled. The correctness of this ruling is the only question now to be considered. When did the statute begin to run? The general rule is, as stated by the learned trial judge, that it begins to run from the act done, but this is not of universal application. The statute makes certain exceptions. As to all persons who may be when the cause of action accrues " within the age of twenty-one years, femme covert, non compos mentis, imprisoned, or beyond sea," it is provided that the statute shall not begin to run until such disability ceases. In 1842 a supplementary statute restrained the running of the limitation still further so as to include a resident plaintiff laboring under no disability whatever, if the defendant debtor or wrongdoer should be beyond sea when the cause of action arose. As to such a plaintiff the running of the statute does not begin until the return of the debtor or trespasser to this country so that proceedings against him become possible. It is easy to see that the mischief which the statute was intended to remedy was delay in the assertion of a legal right which it was practicable to assert.

The remedy provided was a denial of process to one who had slumbered for six years during which process was within his reach. The cases in which this denial would work a posi-

tive and an apparent hardship, so far as they were foreseen by the lawmakers, were provided for by the exceptions to which we have referred and by the act of 1842. These have been extended by the courts so as to include other cases which, while not within the letter of the statute, were held to be within the spirit of the proviso. Thus it was held in Hall v. Vandergrift, 3 Binney, 374, that " It is the spirit of the statute of limitations to allow twenty-one years from the time that a person might make entry on land and support an action " before taking away his remedy. For this reason it was decided that it did not run against one who had a possibility of title but no present right of entry. Again it was held that when the plaintiff had been kept in ignorance of his rights by fraudulent practices on the part of the defendant the statute did not begin to run against him until discovery of the fraud.

The earliest case I have found in which the courts of this state applied this doctrine in a common law action is Jones v. Reese's Executors, found in Smith's Laws, vol. 1, page 80. The case was tried at circuit before Yates and Smith, justices. It appeared that Reese had sold a negro to Jones in 1786 alleging him to be a slave. The negro was in fact a free man but had been kept in ignorance of it by the fraudulent practices of Reese. He discovered the fraud and his own freedom in 1801, and brought an action against Jones for the purpose of having his freedom established in a court of law and of recovering damages for his deprivation of it. He recovered. Jones then brought an action against Reese to recover the price paid for the negro some sixteen years before, and for damages. Reese set up the statute of limitations. The court refused to sustain the plea giving as a reason therefor that " whenever there is a fraud the act of limitations is no plea unless the fraud be discovered within the time ; " that is, within the time fixed by the statute, or six years before suit brought. To make this entirely clear it was added that " while the slavery of the negro was uncontested the plaintiff had no ground to suppose he had been injured or deceived, but when he obtained his liberty in a due course of law the plaintiff's cause of action accrued against the defendants." This rule was applied in an action of ejectment in Thompson et al. v. Smith, 7 S. & R. 209, and was stated by TILGHMAN, C. J., at page 214, as follows : " After the

discovery of the fraud a man has a right to avail himself of the statute; but so long as the fraud is unknown, pending the concealment of the fraud, the statute ought not to run. The discovery of the fraud gives a new cause of action." This rule has long been applied in equity where two good reasons are given for it. The first is that it would be inequitable to permit a defendant to profit by his own fraud. The other is that one who cannot assert his right, because the necessary knowledge is improperly kept from him, is not within the mischief the statute was intended to remedy, but is within the spirit of the proviso that restrains its operation. Courts of equity go a step further still, and decline to apply the statute where the plaintiff neither knew, nor had reasonable means for knowing, of the existence of a cause of action. But if the cause of action be known, or might have been known by the exercise of vigilance in the use of means within reach, equity follows the law and applies the statute : Hamilton v. Hamilton's Exrs., 18 Pa. 20; Neeley's and Cozad's Appeals, 85 Pa. 387. Mere ignorance will not prevent the running of the statute in equity any more than at law; but there is no reason, resting on general principles, why ignorance that is the result of the defendant's conduct, and not of the stupidity or negligence of the plaintiff, should not prevent the running of the statute in favor of the wrongdoer. It seems to be the general doctrine in courts of law that the plaintiff is bound to know of an invasion of the surface of his close. The fact that his land is a forest and that the defendant goes into its interior to trespass by the cutting of timber, does not relieve against its operation. What is plainly visible he must see at his peril, unless by actual fraud his attention is diverted and his vigilance put to sleep. But ought this rule to extend to a subterranean trespass? The surface is visible and accessible. The owner may know of its condition without trespassing on others and for that reason he is bound to know. The interior of the earth is invisible and inaccessible to the owner of the surface unless he is engaged in mining operations upon his own land; and then he can reach no part of his own coal stratum except that which he is actually removing. If an adjoining landowner reaches the plaintiff's coal through subterranean ways that reach the surface on his own land and are under his actual control, the vigilance the

law requires of the plaintiff upon the surface is powerless to detect the invasion by his neighbor of the coal one hundred feet under the surface.

The case at bar affords an excellent illustration of ignorance due to the defendant's conduct and without fault on the part of the plaintiff. The defendant was mining its own coal through its own shafts or drifts opened on its own lands. In the course of its operations and for its own convenience it pushed an entry or passage under the plaintiff's lands and appropriated the coal removed therefrom. It was bound to know its own lines and keep within them. If by mistake or for any other reason it did invade the mineral estate of another and remove and appropriate the coal therefrom, good conscience required that it should disclose the fact and pay for the coal taken. Its failure to do this is in its effects a fraud upon the injured owner, and if he has no knowledge of the trespass and no means of knowledge, such a fraud whether it be called constructive or actual should protect him from the running of the statute. We have felt constrained to recognize the susceptibility of land to division into as many estates in fee simple as there are strata that make up the earth's crust, and to protect the owners of these separate estates from each other. Thus the possession of one who has a title to the surface only does not extend to or affect any subjacent estate. The occupancy of a coal stratum for more than twenty-one years will not give title to the surface above it, or the oil or gas stratum below it. The law does not require impossibilities. It recognizes natural conditions, and the immutability of natural laws. The owner of the surface cannot see, and because he cannot see the law does not require him to take notice of what goes on in the subterranean estates below him with which he has no communication through openings within his inclosures or under his control. On the other hand, one who is in possession of a lower stratum is not bound to know, nor can he be affected by, what is going on upon the surface above him or in a still lower estate under his feet. The owner of each stratum must however take notice of what affects his own estate, so far as he is in possession of or has access to it. In the case before us no severance of the coal from the surface has taken place. The title of the plaintiff extends from the surface to the center; but actual pos-

session is confined to the surface.   Upon the surface he must be held to know all that the most careful observation by him self and his employees could reveal, unless his ignorance is induced by the fraudulent conduct of the wrongdoer.   But in the coal veins deep down in the earth he cannot see.   Neither in person nor by his servants or employees can he explore their recesses in search for an intruder.   If an adjoining owner goes beyond his own boundaries in the course of his mining opera tions the owner on whom he enters has no means of knowledge within his reach.   Nothing short of an accurate survey of the interior of his neighbors' mines would enable him to ascertain the fact.   This would require the services of a competent mining engineer and his assistants, inside the mines of another, which he would have no right to insist upon.   To require an owner under such circumstances to take notice of a trespass upon his under-lying coal at the time it takes place is to require an impossibil-ity ; and to hold that the statute begins to run at the date of the trespass is in most cases to take away the remedy of the injured party before he can know that an injury has been done him.   A result so absurd and so unjust ought not to be possible.

In the English courts this question has arisen quite fre-quently.   The old rule applied in the courts of law was that the statute might be successfully pleaded as running from the date of the trespass.   In the courts of equity where an account for the coal that has been taken was asked for it was applied only from the discovery of the trespass: McSwinny on Mines, 543; see also, Hovenden v. Lord Armsley, 2 Sch. & L. 634. If, after discovery, or the happening of any circumstance cal-culated to put the owner on notice, he slept on his right till the statutory period had expired he was held bound by the statute in equity precisely as he would have been at law.   If he knew, or if by the exercise of reasonable care he might have known of the trespass, the statute ran from the discovery, or the time when discovery could have been made.   Bainbridge on Mines, 515, 516.   It was against good conscience to permit one who had taken the property of another without the owner's knowledge, and who had failed to disclose or to account for what he had taken, to avail himself of the statute while the owner remained in ignorance of his loss.   When compensation was sought by means of a bill for an account it was held that

the statute began to run at the time of discovery regardless of the time of taking. The same question was also encountered in actions to recover for injuries done on the surface by subsidence due to the withdrawal of support. When the action was trespass, it was generally held that the statute ran from the date of the removal of the support which was the trespass to which the injury was due; but when the action was case the subsidence was treated as the consequence of the wrongful removal of the coal or other underlying stratum, and the damages suffered as consequential. The happening of the injury was upon this ground held to give a cause of action against which the statute would run only from its date. The removal of the supports might not be known to, or be discoverable by, the owner of the surface until the subsidence revealed it; and unless the injury consequential to the trespass could be treated as creating a cause of action, in most cases redress for a substantial injury would be denied altogether: 34 L. J. Q. B. 181; Backhouse v. Bonomi, 9 H. L. Cas. 503; Smith v. Thackerah, 15 Am. Law Reg. (N. S. vol. 5) 761 and note. The reason for the distinction exists in the nature of things. The owner of land may be present by himself or his servants on the surface of his possessions no matter how extensive they may be. He is for this reason held to be constructively present wherever his title extends. He cannot be present in the interior of the earth. No amount of vigilance will enable him to detect the approach of a trespasser who may be working his way through the coal seams underlying adjoining lands. His senses cannot inform him of the encroachment by such trespasser upon the coal that is hidden in the rocks under his feet. He cannot reasonably be held to be constructively present where his presence is in the nature of things impossible. He must learn of such a trespass by other means than such as are within his own control, and until these come within his reach he is necessarily ignorant of his loss. He cannot reasonably be required to act until knowledge that action is needed is possible to him. We are disposed to hold therefore that the statute runs against an injury committed in or to a lower stratum from the time of actual discovery, or the time when discovery was reasonably possible. But it is enough for the purposes of this case to hold that inasmuch as equity is administered in this state through

the common law forms of action, the plaintiff need not be turned out of a court of law in order to be admitted at the equity side of the same court.   He may not be entitled to statutory damages but he is entitled to compensation in the same manner that he would have been on a bill for an account.   For this purpose the equitable rule that the statute shall run only from discovery, or a time when discovery might have been made, should be applied by courts of law. It follows that the judgment in this case must be reversed and a new trial had in which the jury should be instructed that while the statute may be available as against the penal consequences of the trespass, it is not available as a defence against payment for the coal actually taken and converted to the use of the defendant.   The statute will run against a claim for compensation from the time the existence of the claim was, or might have been, known to the plaintiff, the owner and occupier of the surface.

The judgment is reversed and a venire facias de novo awarded.

MITCHELL, J., dissents.