**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1368
_____

HERAEUS MEDICAL GMBH,

Appellant

v.

ESSCHEM, INC.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-14-cv-05169)
Honorable Cynthia M. Rufe, U.S. District Judge

_____

Argued: October 23, 2018

Before: KRAUSE, COWEN, and FUENTES, *Circuit Judges*

(Opinion Filed:  June 21, 2019)

Bruce P. Merenstein
Samuel W. Silver
John R. Timmer
Schnader Harrison Segal & Lewis
1600 Market Street
Suite 3600
Philadelphia, PA 19103

John Nilsson
Matthew M. Wolf          [Argued]
Arnold & Porter Kaye Scholer
601 Massachusetts Avenue, N.W.
Washington, DC 20001

R. Reeves Anderson
Arnold & Porter Kaye Scholer
370 Seventeenth St.
Suite 4400
Denver, CO 80202
        *Counsel for Plaintiff-Appellant Heraeus Medical
        GmbH*

Benjamin P. Gilford
Greenberg Traurig
333 Southeast 2nd Avenue
Suite 4400
Miami, FL 33131

Richard D. Harris          [Argued]
Cameron M. Nelson
Gregory E. Ostfeld
Greenberg Traurig

77 West Wacker Drive
Suite 3100
Chicago, IL 60601

Mary F. Platt
Fineman Krekstein & Harris
Ten Penn Center
1801 Market Street, Suite 1100
Philadelphia, PA 19103
　　*Counsel for Defendant-Appellee Esschem, Inc.*

_____

OPINION OF THE COURT

_____

KRAUSE, *Circuit Judge*.

　　The case before us involves another skirmish in a long-running, cross-border court battle over the alleged theft of a trade secret: Heraeus Medical GmbH's recipe for its bone cement. In this appeal, we consider whether Heraeus' suit against Esschem, Inc.—a company that works as a chemical manufacturer for Heraeus' main competitor—is barred by the statute of limitations under the Pennsylvania Uniform Trade Secrets Act. At summary judgment, the District Court held that all of Heraeus' claims, including those for Esschem's alleged continuing misappropriation during the three-year limitations period, are time-barred and entered judgment for Esschem. We agree that alleged misappropriations that occurred more than three years before Heraeus filed suit are time-barred, but because we hold that Pennsylvania applies the rule of separate accrual to continuing trade secret

misappropriations, Heraeus may sue for misappropriations that occurred within the three-year period before filing. We thus will reverse in part and affirm in part the District Court's grant of summary judgment.

## I.      Background[1]

Heraeus is a German company that develops and produces Palacos, a bone cement used to anchor artificial joints in joint replacement surgeries. To make Palacos, Heraeus developed its own particular process to manufacture two key components: copolymers known as R262 and R263 (the "copolymers"). Biomet also sells bone cement and is one of Heraeus' major competitors in this market. To make its bone cement, Biomet uses the same copolymers, which it buys from Esschem, a Pennsylvania company that manufactures acrylic polymers and monomers.

Heraeus holds trade secrets related to the "overall specifications for the . . . bone cement," including

---

[1] The facts set forth here are drawn from a combination of the District Court's recital of the facts and the parties' submissions on summary judgment. To the extent certain background facts appear only in the District Court opinion, we note that the District Court appears to have drawn them from the complaint, although Esschem indicated it was "without knowledge or information sufficient to form a belief" about many of those facts. Esschem's Answer at 1–10, ECF No. 87. Nonetheless, because these allegations pertain only to general background and Esschem does not take issue with them on appeal, we will reference them where relevant.

4

"specifications for [the] copolymers." App. 81. These trade secrets changed hands several times over the years before allegedly falling into Esschem's possession. In 1972, thirteen years after Palacos first came on the market, Heraeus entered into a distribution agreement with Merck, pursuant to which Heraeus disclosed its trade secrets so that Merck could "obtain and maintain regulatory approval" to distribute Palacos. App. 84. Merck was also obligated under the agreement to protect Heraeus' trade secrets from disclosure to third parties without first obtaining Heraeus' consent. This arrangement was in place until 1997, when Merck and Biomet entered into a joint venture that took over the distribution of Palacos. At that point, Heraeus agreed to supply the joint venture, and only Merck, pursuant to its confidentiality agreement with Heraeus, had access to the trade secrets covering the copolymers.

In 2004, however, Biomet acquired Merck's shares in the joint venture, taking over the distribution agreement and, unbeknownst to Heraeus, also gaining access to Heraeus' trade secrets. Upon learning of the joint venture's sale to its competitor, Heraeus announced it would terminate the distribution agreement in August 2005, but by the time Heraeus severed its ties with Biomet, Biomet had already launched its own competing bone cement—a feat that Heraeus alleges its "competitors had failed to do for decades" and that it contends has since cost it 50 percent of its market share. App. 88. Suspecting that Biomet's bone cement was created using its trade secrets, Heraeus acquired and analyzed samples of Biomet's bone cement in 2005 and discovered that, except for "[m]inor discrepancies," it "w[as] virtually identical to" Heraeus' bone cement and that Esschem was manufacturing the copolymer components for Biomet. App. 89.

5

Over the next few years, Heraeus took legal action to protect its trade secrets. It filed suit for trade secret misappropriation against Biomet in Germany in December 2008, and shortly thereafter, in aid of that litigation, brought discovery suits in the United States against both Esschem and Biomet.[2]

In its discovery suit against Esschem, Heraeus sought "documents relating to communications between Esschem and . . . Biomet . . . regarding the development" of the copolymers. *In re Heraeus Kulzer GmbH*, 2009 WL 2981921, at *3. At the time, Heraeus' theory was that Biomet had "instruct[ed Esschem] to manufacture [the copolymers] using Heraeus' highly confidential information and trade secrets." App. 651. After an appeal, this Court ordered expedited discovery from Esschem in July 2010. *Heraeus Kulzer GmbH*, 390 F. App'x at 93. Esschem then produced several e-mail chains between employees of Biomet and Esschem in which they discussed the development of the copolymers. In those chains, all of which had been produced to Heraeus by March 2011, Biomet employees Dan Smith and Rainer Specht specifically "discuss[ed] the specifications for R262 and R263" with Esschem employees. Appellee's Br. 37–38.

---

[2] *In re Heraeus Kulzer GmbH*, No. 09-MC-00017, 2009 WL 2981921 (E.D. Pa. Sep. 11, 2009), *rev'd by Heraeus Kulzer GmbH v. Esschem, Inc.*, 390 F. App'x 88 (3d Cir. 2010); *In re Application of Heraeus Kulzer for Order Pursuant to 28 U.S.C. Section 1782*, No. 3:09-CV-183 RM, 2009 WL 2058718 (N.D. Ind. Jul. 9, 2009), *rev'd by Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591 (7th Cir. 2011).

Discovery against Esschem ended sometime between August and December 2011, but discovery and litigation against Biomet continued for several more years. In the course of the proceedings against Biomet—specifically, in a December 2011 deposition—Dan Smith corroborated what the e-mail chains had indicated: that Biomet employees were "direct participants," Appellant's Br. 11 (quoting Sealed App. 1703) in the development of the copolymers and that "their work with Esschem . . . ultimately led to the copolymers manufactured by Esschem for use in Biomet's bone cement," *id*. Heraeus contends it was not until "that time," i.e., December 2011, that it had "sufficient information to believe that Esschem had actively participated in the misappropriation of [its] trade secrets." *Id.* at 12.

Just short of three years later, on September 8, 2014, Heraeus sued Esschem for trade secret misappropriation in the Eastern District of Pennsylvania. The complaint included one count for misappropriation of trade secrets under the Pennsylvania Uniform Trade Secrets Act (PUTSA) and five counts for common law claims.[3]

Following discovery, Esschem moved for summary judgment, arguing that all of Heraeus' claims were time-barred. Under the PUTSA, a plaintiff has three years from when "the misappropriation was discovered or by the exercise of reasonable diligence should have been discovered" to bring

---

[3] Those common law claims were: (1) conspiracy to misappropriate a trade secret; (2) unjust enrichment; (3) unfair competition; (4) tortious interference with economic advantage; and (5) conversion.

suit. 12 Pa. Cons. Stat. § 5307. Esschem argued that Heraeus discovered or should have discovered the alleged misappropriations as early as 2005, making its PUTSA claims untimely. And because the common law claims were based on the same facts as the PUTSA claims and were subject to statutes of limitations of no more than four years, they were also untimely.

In its opposition motion, Heraeus countered that it did not discover the necessary facts to sue for trade secret misappropriation until "the end of 2011," and that any dispute over when it discovered those facts was an issue of triable fact that precluded summary judgment. App. 663. Heraeus also urged that continuing misappropriations were subject to the separate accrual rule, so that, under the PUTSA, each additional use of Heraeus' trade secrets within three years of the filing of the complaint gave rise to a separate and timely cause of action.

The District Court rejected both of Heraeus' arguments and ruled that the statutes of limitations had run on its PUTSA and common law claims. At the very latest, the Court found, Heraeus was aware of "the facts supporting its misappropriation claims" against Esschem by January 2009. *Heraeus Med. GmbH v. Esschem, Inc.*, 285 F. Supp. 3d 855, 861 (E.D. Pa. 2018). It also held that Esschem's additional uses of the trade secrets between September 2011 and the filing of the complaint in September 2014 were part of a single and time-barred cause of action under the PUTSA because Esschem's continued use of the trade secrets was "nothing more than a continuation of the original alleged misappropriation." *Id.* at 863. Interpreting the PUTSA to adopt the separate accrual rule, it reasoned, would "eliminate

the statute of limitations altogether" by allowing Heraeus to "sit by for nearly a decade" after learning all facts necessary to bring a claim and to obtain damages for the entire period so long as one misappropriation took place within the statute of limitations.[4]  *Id*.  On that basis, the Court granted summary judgment for Esschem, and Heraeus now appeals.

## II.    Jurisdiction and Standard of Review

The District Court had diversity jurisdiction under 28 U.S.C. § 1332(a) and we have jurisdiction under 28 U.S.C. § 1291.  Because we are sitting in diversity and Heraeus brings state claims, we apply Pennsylvania law to address the parties' arguments related to the PUTSA's statute of limitations.  *See Ragan v. Merchs. Transfer & Warehouse Co.*, 337 U.S. 530, 533 (1949); *Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007) (citing *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945)).

We review the District Court's grant of summary judgment de novo.  *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215 (3d Cir. 2015).  To prevail at this stage, the moving party must establish that "there is no genuine dispute as to any

---

[4] The District Court correctly identified the tension between those jurisdictions that treat continuing misappropriations as a single claim and those that treat continuing misappropriations as a series of separate misappropriations subject to the separate accrual rule.  As we explain below, however, it was mistaken in conflating the effect of the separate accrual rule with the effect of the continuing violation doctrine on the statute of limitations.  *See infra* Section III.B.2.

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts should be viewed "in the light most favorable to the non-moving party," with "all reasonable inferences [drawn] in that party's favor." *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.    Discussion

On appeal, Heraeus raises the same two arguments it did below. First, it contends that it did not discover sufficient facts to state a claim against Esschem until December 2011, and therefore its September 2014 suit fell within the three-year limitations period. And to the extent there is a dispute over *when* Heraeus discovered sufficient facts to state a claim, Heraeus argues, this is a factual dispute for the jury. Second, Heraeus posits that even if the limitations period began to run before September 2011, Esschem would still be liable for each time it used the trade secrets to manufacture the copolymers between September 2011 and September 2014 because continuing misappropriations under the PUTSA are subject to the separate accrual rule. We address these issues in turn.[5]

---

[5] The District Court dismissed Heraeus' common law claims for the same reasons it dismissed its PUTSA claims. On appeal, however, Heraeus directs its arguments only to its PUTSA claims and thus has waived any challenge to the denial of its common law claims.

10

### A. The Commencement of the Limitations Period

A "limitations period generally begins to run 'as soon as [an] injury is sustained.'" *Davis v. Wells Fargo,* 824 F.3d 333, 344 n.13 (3d Cir. 2016) (quoting *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006)). In Pennsylvania, there are several "exception[s]" to this "general rule." *Pocono Intern. Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983). One is the discovery rule, which evolved from the notion that a limitations period should not "run[] against" a plaintiff who is "ignorant of his loss." *Lewey v. H.C. Frick Coke Co.*, 31 A. 261, 264 (Pa. 1895). When the discovery rule applies, the limitations period only begins to run once the plaintiff is no longer "ignorant of his loss," *id.*, i.e., once he is able to "ascertain the fact of a cause of action," *Pocono*, 468 A.2d at 471. That is not to say the period is suspended until the plaintiff has "acquired finite knowledge of *all* operative facts." *Id.* (emphasis added). Rather, "[f]or the statute of limitations to run, a plaintiff need not know the 'exact nature' of his injury, as long as it objectively appears that the plaintiff 'is reasonably charged with the knowledge that he has an injury caused by another.'" *Mest*, 449 F.3d 502, 510-11 (quoting *Ackler v. Raymark Indus., Inc.,* 551 A.2d 291, 293 (Pa. Super. Ct. 1988)).

The PUTSA explicitly incorporates the discovery rule. Under the statute, a plaintiff has three years to file an action for trade secret misappropriation once she "discover[s]" or "should have . . . discovered" the misappropriation.[6] 12 Pa.

---

[6] In full, this provision reads: "An action under this chapter for misappropriation must be brought within three

11

Cons. Stat. § 5307. "Misappropriation," in turn, is defined in several ways, but one definition in particular applies here: If, as Heraeus contends, Esschem received Heraeus' trade secrets not from Heraeus itself, but from Biomet, Esschem could be liable for "use of a trade secret of another without express or implied consent," so long as, "at the time of . . . use," Esschem "knew or had reason to know that [its] knowledge of the trade secret was . . . derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit it use." 12 Pa. Cons. Stat. § 5302(2)(ii)(C). In other words, the limitations period would only begin to run once Heraeus discovered sufficient facts to make it reasonably aware not only that Esschem used Heraeus' trade secrets without Heraeus' consent, but also that Esschem knew or had reason to know that Biomet owed a duty to Heraeus to maintain their secrecy. *Cf. Merck & Co. v. Reynolds*, 559 U.S. 633, 637 (2010) (holding that "scienter" is a fact which a plaintiff must discover in order for the statute of limitations to begin running on a § 10(b) claim under the Securities Exchange Act).

According to Heraeus, it was not until it deposed Biomet's Dan Smith in December 2011 that it obtained sufficient evidence of scienter. Specifically, Heraeus directs us to two pieces of information that it asserts gave it notice of Esschem's state of mind: Smith's testimony (1) that he and another Biomet employee were "direct participants" in work with Esschem; and (2) that this work with Esschem "ultimately led to the copolymers . . . for use in Biomet's bone cements."

_____

years after the misappropriation was discovered or by the exercise of reasonable diligence should have been discovered." 12 Pa. Cons. Stat. § 5307.

12

Appellant's Br. 11–12. Heraeus contends those concessions finally revealed that "Esschem knew that Biomet was using stolen trade secrets." *Id.* at 33.

But the argument proves too much, for if that information was sufficient to put Heraeus on notice of Esschem's scienter, then Heraeus was necessarily on notice nine months earlier when it came into possession of essentially the same information. In a March 2011 discovery production, Heraeus received, among other things, a 2004 e-mail exchange between Smith and Esschem in which Smith attempted to troubleshoot Esschem's manufacturing difficulties, and, in declining to provide more detailed copolymer specifications, noted that doing so would disclose non-public information. But follow-up e-mails to Esschem from the other Biomet employee, Rainer Specht, which Heraeus also received in discovery by March 2011, did provide Esschem with those supposedly non-public details. And soon thereafter, as Heraeus was well aware, Biomet released its competing bone cement.

This sequence and the face of these detailed exchanges about the copolymer specifications reveal that the very facts that Heraeus claims it first learned in the December 2011 deposition were in its possession by March 2011: (1) "direct participat[ion]" by Biomet employees in Esschem's development of the copolymers; and (2) that this participation is what "ultimately led" to Esschem's successful production of the copolymers. Appellant's Br. 11. Moreover, the March 2011 discovery revealed the additional fact that Esschem had reason to believe Specht's subsequent disclosure of the copolymer specifications constituted non-public information, i.e., information that was "derived from or through a person

13

who owed a duty to the person seeking relief to maintain its secrecy." 12 Pa. Cons. Stat. § 5302.[7] Thus, the information that Heraeus learned through Smith's testimony was duplicative and, if anything, less revealing than the discovery it received in March 2011. So, it was March 2011 when the limitations period began to run and March 2014, three years later, when it expired.[8]

---

[7] In a filing below, Heraeus itself touted this logic, describing the information in Specht's later e-mails as "the same information that Esschem had previously requested [from Biomet] . . . [but] had been told that Biomet could not provide." App. 142.

[8] The District Court held, and Esschem argues on appeal, that Heraeus had sufficient information to state a claim against Esschem at various points between 2005 and 2010, such as in January 2009, when Heraeus brought its discovery suit against Esschem in the United States. At that time, Heraeus sought information from Esschem about its communications with Biomet because it believed that Biomet had "instruct[ed Esschem] to manufacture [the copolymers] using Heraeus' highly confidential information and trade secrets." App. 651. Esschem maintains that this suspicion was enough for Heraeus to bring suit for Esschem's alleged misappropriations. As Heraeus points out, however, without evidence that Esschem knew the instructions it was receiving from Biomet were derived from Heraeus' trade secrets, the possibility that Esschem was "a total innocent" remained. Appellant's Reply Br. 23. In any event, we need not determine whether Heraeus could have stated a claim at some point before March 2011 because, outside of any claims that accrued in the three-year period before filing, its September 2014 suit was

Heraeus, however, did not file suit until September 2014—three and a half years later. Thus, any misappropriations prior to March 2011 and any that occurred between March and September 2011 (which would have been discovered as they occurred) are indeed time-barred.

The question remains whether Esschem's alleged continued use of Heraeus' trade secrets between September 2011 and September 2014 is properly viewed as part of one violation that is time-barred in its entirety, as the District Court held, or instead as a series of separate misappropriations that accrued individually and thus were timely asserted. As we explain next, the PUTSA provides the answer.

### B. The Timeliness of Claims for Misappropriation After September 2011

The Pennsylvania General Assembly based the PUTSA on the provisions of the Uniform Trade Secrets Act (UTSA). But while it adopted most of those provisions, it opted to diverge from them in certain instances. One such instance is in the treatment of a "continuing misappropriation." The UTSA provides:

> An action for misappropriation must be brought within 3 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim.

untimely even if the limitations period began to run earlier than March 2011.

Unif. Trade Secrets Act § 6 (Unif. Law Comm'n 1985). In the PUTSA, the Pennsylvania General Assembly tracked this language nearly verbatim, except that it omitted the final sentence, so that Pennsylvania's statute states simply:

> An action under this chapter for misappropriation must be brought within three years after the misappropriation was discovered or by the exercise of reasonable diligence should have been discovered.

12 Pa. Cons. Stat. § 5307.

The parties view the omission of the final sentence very differently. Heraeus argues that the Pennsylvania legislature intended "each wrongful use of misappropriated trade secrets [to] trigger a distinct limitations period" and that, under this separate accrual rule, its claims for misappropriations between September 2011 and September 2014 are timely. Appellant's Br. 14. Esschem, on the other hand, defends the District Court's rejection of the separate accrual rule as a rule that would nullify the PUTSA's statute of limitations, and it urges that we affirm the denial of Heraeus' PUTSA claims as a single, time-barred cause of action.

As explained below, Heraeus has the better of the argument. The District Court erred in treating Esschem's continued use of Heraeus' trade secrets as a single misappropriation for three reasons: (1) the text of the PUTSA; (2) Pennsylvania's common law rule of separate accrual, which provided the backdrop against which the PUTSA was drafted; and (3) Pennsylvania's adoption of the Restatement of Torts,

16

which also endorses the separate accrual rule for continuing misappropriations.  We address these in turn.

> 1.  *The PUTSA Treats Continuing Misappropriations as Separate Violations Subject to the Separate Accrual Rule*

> a.  The Text of the PUTSA

The UTSA, by its terms, treats a continuing misappropriation as a single claim, but Pennsylvania, like some other states, opted not to enact that particular provision. *See, e.g.*, N.C. Gen. Stat. Ann. § 66-157 (North Carolina); Ala. Code § 8-27-5 (Alabama).  While we do not have the occasion to opine on the significance of that omission for other states, Pennsylvania's canons of construction indicate that the omission reflects the General Assembly's intent to apply the separate accrual rule to continuing misappropriations.

Pennsylvania law provides that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."  1 Pa. Cons. Stat. § 1921.  A situation like the one here, where the General Assembly omitted text from a borrowed statute, offers strong evidence of legislative intent. *See Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 985 A.2d 678, 684 (Pa. 2009) (holding that "where a section of a statute contains a given provision, the omission of such a provision from a similar section is significant to show a different legislative intent").  Under the "separate-accrual rule," which we have defined as "[a] corollary of the standard rule" for accrual of federal causes of action, a continuing misappropriation gives rise to multiple

17

discrete claims corresponding to each act of misappropriation, and "[b]ecause each act violates the law on its own, each act separately triggers its own limitations period." *Blake v. JP Morgan Chase NA*, No. 18-2368, slip op. at 10 (3d Cir. June 19, 2019). The Uniform Law Commission expressly rejected this separate accrual rule in the second sentence of UTSA § 6 by providing that "a continuing misappropriation constitutes a *single* claim," i.e., *not* a series of claims. Unif. Trade Secrets Act § 6 (emphasis added). But the Pennsylvania General Assembly rejected that second sentence and retained only the first when it enacted PUTSA § 5307, indicating that it intended to retain the separate accrual rule. *See Fletcher*, 985 A.2d at 684.

Esschem, however, asks us to ignore the significance of the second sentence's omission and to imply the General Assembly's rejection of the separate accrual rule into the first sentence. But in interpreting a statute, "language should not be implied where excluded," and we will not contravene legislative intent by reading into PUTSA § 5307 the very language that the General Assembly chose to omit. *Fonner v. Shandon, Inc.*, 724 A.2d 903, 907 (Pa. 1999). Nor does the text of the first sentence support Esschem's reading. That sentence, which the General Assembly retained, simply specifies *when* the limitations period begins—which is when "the misappropriation is discovered" or "should have been discovered." Unif. Trade Secrets Act § 6. It has no bearing on whether continuing misappropriations are treated as a single claim or multiple claims. That is a separate question that is addressed by the UTSA's second sentence, independent of the first.

18

The comments to the UTSA reinforce this reading of PUTSA § 5307.[9]  The UTSA drafters made explicit that they sought in § 6 to achieve two distinct results: (1) to "reject[] the continuing wrong approach," under which "the limitation period with respect to a specific act of misappropriation begins at the time that the act of misappropriation occurs"—that is, to reject the separate accrual rule; and (2) to start the limitations period upon "discover[y of] the existence of misappropriation."  Unif. Trade Secrets Act § 6 cmt. Esschem's argument that the first sentence alone is sufficient to achieve both of these results is thus not only atextual, but it also renders the second sentence mere surplusage, contrary to Pennsylvania's canons of construction. *See Matter of Emps. of Student Servs., Inc.*, 432 A.2d 189, 195 (Pa. 1981).

We decline to adopt Esschem's reading.  Instead, we glean from the text of the statutes that the UTSA adopted the discovery rule and single-claim treatment for continuing misappropriations, and the PUTSA embraced the UTSA's discovery rule but declined its single-claim treatment in favor of the separate accrual rule.

---

[9] "The comments or report of the commission . . . which drafted a statute may be consulted in the construction or application of the original provisions of the statute" as long as those materials were available when the statute was drafted.  1 Pa. Cons. Stat. § 1939.  Since the UTSA was last updated in 1985 and the PUTSA was passed in 2004, the Uniform Law Commission's comments are properly within the scope of our analysis. *See Advanced Fluid Sys., Inc. v. Huber*, No. 1:13-CV-3087, 2017 WL 2445303, at *11 n.7 (M.D. Pa. June 6, 2017).

b.       Pennsylvania's Common Law
Rule of Separate Accrual

That the Pennsylvania legislature intended to follow the separate accrual rule is all the more apparent when we consider the omission of the UTSA's second sentence against the backdrop of Pennsylvania common law.

As explained by our former Chief Judge Edward Becker when he sat on the District Court in *Anaconda Company v. Metric Tool & Die Company*, Pennsylvania courts have adopted the "property" view of trade secrets, under which the basis of a claim for trade secret misappropriation is the violation of a property right, in contrast to the "confidential relationship" view, under which a misappropriation is based on a violation of a duty of confidentiality.  485 F. Supp. 410, 425–26 (E.D. Pa. 1980).[10]   And the property view provides the

---

[10] *See generally Van Prods. Co. v. Gen. Welding & Fabricating Co.*, 213 A.2d 769, 780 (Pa. 1965) (rejecting the confidential relationship view and holding that "[t]he starting point in every case of [trade secret misappropriation] is not whether there was a confidential relationship, but whether . . . there was a trade secret to be misappropriated"); *Den-Tal-Ez, Inc. v. Siemens Capital Corp.*, 566 A.2d 1214, 1228 (Pa. Super. 1989) (noting that "*Van Products* has been construed to have adopted the 'property' view of trade secrets" and that "[c]ases decided more recently than *Van Products* make it clear that this is still the proper focus in a trade secrets case"); *see also Moore v. Kulicke & Soffa Indus., Inc.*, 318 F.3d 561, 571 (3d Cir. 2003) (discussing *Van Products* and its progeny); *Sims v. Mack Truck Corp.*, 488 F. Supp. 592, 598 (E.D. Pa. 1980)

theoretical underpinnings for the separate accrual rule: While a breach of confidentiality only occurs upon the initial misappropriation, and the "fabric of the [confidential] relationship once rent is not torn anew with each added use or disclosure," under the property view, a trade secret "is in the nature of property[] [and] is damaged or destroyed by the adverse use," such that "each use is a new wrong." *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.*, 407 F.2d 288, 293 (9th Cir. 1969). It is for that reason, as Judge Becker held in applying Pennsylvania's common law of trade secrets, that "the statute of limitations for the tort of wrongful use begins to run at the time of the wrongful use, and not at the time of the initial misappropriation." *Anaconda*, 485 F. Supp. at 426. He recognized, in other words, that Pennsylvania's common law embraced the separate accrual rule.

Esschem takes issue with *Anaconda*'s holding on the ground that no Pennsylvania court "ever applied the separate accrual rule to common law trade secret claims." Appellee's Br. 49–50. But *Anaconda*'s reasoning is sound, and although no Pennsylvania court has explicitly discussed this reasoning, other courts have, confirming the separate accrual rule's roots in the property view and its incompatibility with the confidential relationship view. *Compare Underwater Storage, Inc. v. U.S. Rubber Co.*, 371 F.2d 950, 955 (D.C. Cir. 1966) (recognizing that use of a trade secret gives rise to a cause of action and allowing "suit for any use of the [trade] secret so long as the use has occurred within the statutory period of limitations immediately preceding the bringing of the action"),

("Pennsylvania cleaves to the 'property' view of trade secrets law.").

*with Monolith*, 407 F.3d at 293 (holding that "[t]he cause of action arises but once," when the confidential relationship is breached). As the Fifth Circuit summarized, "[j]urisdictions that adopt the 'breach theory' of trade secret misappropriation, as opposed to the 'property theory,' generally do not treat trade secret misappropriation as a continuing tort." *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 451 (5th Cir. 2007); *see also Cypress Semiconductor Corp. v. Superior Court*, 163 Cal. App. 4th 575, 582 (2008) (collecting cases and noting the same).

We hold today that this common law rule was not displaced by the PUTSA. The Pennsylvania Supreme Court has long instructed that "provisions in derogation of the common law are to be held strictly," *Gibson v. Commonwealth*, 87 Pa. 253, 256 (1878), and that "[s]tatutes are never presumed to make any innovation in the rules and principles of the common law or prior existing law beyond what is expressly declared in their provisions," *Rahn v. Hess*, 106 A.2d 461, 464 (Pa. 1954). The PUTSA "expressly declare[s]" only that trade secret misappropriation claims are subject to the discovery rule. So by omitting the UTSA's second sentence, the General Assembly in effect codified Pennsylvania common law, foregoing the single-claim approach in favor of the separate accrual rule and harmonizing the PUTSA with Pennsylvania's property view of trade secrets. Far from abrogating the common law rule of separate accrual then, the PUTSA was drafted to preserve it.

22

### c. Pennsylvania's Adoption of the Restatement of Torts

Our reading of the PUTSA is also in line with the approach taken by the Restatement of Torts, which courts in Pennsylvania "have generally accepted . . . as the basic outline for [Pennsylvania's] trade secrets law." *O.D. Anderson, Inc. v. Cricks*, 815 A.2d 1063, 1070 (Pa. Super. Ct. 2003); *see Coll. Watercolor Grp., Inc. v. William H. Newbauer, Inc.*, 360 A.2d 200, 204 (Pa. 1976) ("The standard for determining whether one is liable for the use or disclosure of another's trade secret is set forth in the Restatement, Torts, [§] 757 (1939) and in *Van Products . . . .*"); *Den-Tal-Ez, Inc.*, 566 A.2d at 1228 (noting the same). The Restatement recognizes a cause of action not only for the initial disclosure of a trade secret—the confidential relationship view—but also for the wrongful use of a trade secret, explaining that a trade secret holder "may be harmed merely by the disclosure of his secret to others as well as by the use of his secret in competition with him." Restatement (First) of Torts § 757 cmt. c (1939). As we just discussed, harm arising from wrongful use is the hallmark feature of the property view, and the Restatement embraces this theory by providing a cause of action for both disclosure *and* use of a trade secret. *Id.* § 757. Pennsylvania's adoption of the Restatement, then, lends further support to the conclusion that Pennsylvania followed the separate accrual rule for misappropriation claims prior to the PUTSA and that the PUTSA was deliberately drafted to preserve it.

Ultimately, the General Assembly drafted the PUTSA against the backdrop of Pennsylvania's adoption of the Restatement of Torts and its common law rule of separate accrual rule for trade secret misappropriation claims, and it

deliberately omitted a sentence from the UTSA that rejected the separate accrual rule.  Adopting Esschem's reading of the PUTSA, and finding that it eliminated the separate accrual rule, requires us to ignore legislative intent along with several unambiguous directives from the Pennsylvania Supreme Court.  As a result, we hold that, under Pennsylvania law, the separate accrual rule applies to continuing misappropriations.[11]

---

[11] In so holding, we are mindful of the Philadelphia Court of Common Pleas' decision in *WebDiet, Inc. v. NutriSystem, Inc.*, in which it held that the "misappropriation of trade secrets is [not] a continuing tort under the PUTSA," using "continuing tort" to refer to the separate accrual rule.  No. 4055 Commerce Program, 2016 Phila. Ct. Com. Pl. LEXIS 133, at *18–19 (Pa. C.P. Apr. 12, 2016).  However, the Court's treatment of this issue is but a few lines long and it relied solely on the statement in the comment to § 6 of the UTSA that the "Act rejects a continuing wrong approach." *Id.*  As we already discussed, that statement in the comment is tied exclusively to the sentence that the General Assembly chose to omit and is inapposite to interpreting the text of PUTSA.  Sitting in diversity, we are "careful to avoid the 'danger' of giving 'a state court decision a more binding effect than would a court of that state under similar circumstances.'" *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 662 (3d Cir. 1980) (citation omitted).  For the reasons we have discussed, we predict the Pennsylvania Supreme Court would find *WebDiet* similarly unpersuasive.

24

### 2. *Esschem's Arguments to the Contrary Are Unavailing*

Esschem raises two primary objections to this application of the separate accrual rule. Neither is persuasive.

First, following the District Court's lead, Esschem argues that applying the separate accrual rule to a claim for a continuing misappropriation "would nullify the . . . statute of limitations provision." Appellee's Br. 41–42. A "continuing misappropriation" subject to the separate accrual rule may be a "continuing violation" in the colloquial sense, but it is conceptually distinct from the "continuing violation doctrine." The District Court appears to have conflated the two.

The "continuing violation doctrine" applies only to a narrow class of continuing violations for which courts have concluded that a claim accrues over time as a result of a "continuing pattern, practice, [or] policy" that is unlawful in nature. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381 (1982); *see also Randall v. City of Phila. Law Dep't*, 919 F.3d 196, 198 (3d Cir. 2019) ("This doctrine applies 'when a defendant's conduct is part of a continuing practice.'" (citation omitted)). In such cases, "[n]o single act may be enough to make out a claim[, s]o the statute of limitations runs from the last act of the illegal conduct," and a plaintiff "may sue for all acts that make out his claim, even acts that predate the limitations period." *Blake*, slip op. at 10 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118, 122 (2002)).

The same is not true for continuing violations subject to the separate accrual rule, where each violation "starts the statutory period running again" and "the commission of a

separate new overt act [within the limitations period] generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997). Because the separate accrual rule is sometimes referred to with terminology similar to "continuing violation," *see, e.g.*, *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 805 F.3d 701, 704 (6th Cir. 2015) (noting that the "'continuing wrong' approach[] [is] also known as [the] 'separate-accrual' rule"), it is perhaps unsurprising that courts and litigants confuse the two, *see Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 n.6 (2014) (warning against this exact mix-up); *Blake*, slip op. at 9–11 (describing confusion in the parties' arguments about which doctrine applies).

But the separate accrual rule does not "eliminate the statute of limitations altogether" or allow a plaintiff to "sit by for nearly a decade and . . . override PUTSA's three-year statute of limitations," *Heraeus*, 285 F. Supp. 3d at 863; it merely allows the plaintiff to claim as separate misappropriations those wrongful uses of a trade secret that occurred within three years of the complaint's filing. The three-year statute of limitations thus remains in full force under the separate accrual rule—and is far from "toothless," Appellee's Br. 44.

Second, Esschem contends that Heraeus cannot benefit from the separate accrual rule because it did not "assert [in its complaint] distinct claims for each new batch of copolymers that Esschem has sold to Biomet," and cannot do so because Esschem's "ongoing sale of products" does not constitute a continuing misappropriation. Appellee's Br. 53. Because the alleged misappropriation is not a continuing one, the argument

26

goes, but a singular one with lingering effects, Heraeus' claim is time-barred even under the separate accrual rule.

Esschem is right that an injury that is "the lingering effect[] of past unlawful conduct" is "not a continuing violation and . . . thus not actionable in [its] own right." Elad Peled, *Rethinking the Continuing Violation Doctrine: The Application of Statutes of Limitations to Continuing Tort Claims*, 41 Ohio N.U. L. Rev. 343, 366 (2015). And though we recognize that courts, legislators, and academics may disagree on the exact bounds of a continuing violation,[12] we are persuaded that Esschem's alleged continued use of Heraeus' trade secrets is within those bounds.

The PUTSA's broad definition of misappropriation includes a trade secret's "use," which Black's Law Dictionary defines as "[t]he application or employment of something; esp., a long-continued possession and employment of a thing for the purpose for which it is adapted, as distinguished from a possession and employment that is merely temporary or occasional." Black's Law Dictionary (10th ed. 2014). The wrongful use that Heraeus claims against Esschem is not merely sales, but the continued employment of Heraeus' trade

---

[12] *See, e.g.*, *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 633–37 (2007), *abrogated* by 42 U.S.C. § 2000e-5(e)(3)(A) (discussing whether, in an employment suit alleging decreased pay based on gender, the initial employment decision to pay the employee less or the issuance of each reduced paycheck was the actionable violation); Peled, 41 Ohio N.U. L. Rev. at 379–81 (proposing a new framework for defining continuing violations).

secrets in Esschem's manufacturing process. Such conduct, if proven, is well within the broad meaning of "use" and in line with other courts' understanding of continuing misappropriations. *See Underwater Storage*, 371 F.2d at 951–52 (use of misappropriated fuel tank designs to create similar fuel tanks); *Anaconda*, 485 F. Supp. at 417–19 (use of a machine that was designed based on misappropriated trade secrets to produce telephone cord armor); *Cadence Design Sys., Inc. v. Avant! Corp.*, 57 P.3d 647, 648–49 (Cal. 2002) (use of misappropriated source code to create new software). And because the separate accrual rule applies, injuries Heraeus suffered due to any such uses after September 2011 are actionable under the PUTSA.

## IV. Conclusion

For the foregoing reasons, we will reverse in part and affirm in part the District Court's grant of summary judgment and remand for proceedings consistent with this opinion.