

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MORNINGSIDE MINISTRIES, | § | No. 08-23-00332-CV |
| Appellant, | § | Appeal from the |
| v. | § | 451st District Court |
| KOONTZ McCOMBS CONSTRUCTION, LTD. d/b/a KOONTZ McCOMBS CONSTRUCTION, and PROJECT CONTROL OF TEXAS, INC., | § § | of Kendall County, Texas (TC# 20-489) |
| Appellees. | § § | |

## MEMORANDUM OPINION

This is an appeal from the trial court's grant of summary judgment on breach of contract, breach of express warranty and negligence claims in a construction case. Among other issues, we consider whether the alleged construction defects categorically qualify as the type of injury which are "inherently undiscoverable," deferring the applicable limitations periods under the discovery rule. Finding both that the subject injury was inherently undiscoverable, and that Appellees failed to meet their requisite summary judgment burdens, we reverse the trial court's rulings and remand.

# I. BACKGROUND[1]

## A. Morningside contracts with Koontz and Project Control for The Overlook

Appellant Morningside Ministries operates senior living communities and provides senior care services. In March 2012, it entered a construction contract with Appellee Koontz McCombs Construction, Ltd. for The Overlook, an addition to Menger Springs, Morningside's already-existing development in Boerne, Texas. The contract governed the construction of 60 new independent living apartments, 40 new assisted living apartments, site improvements such as utilities and signage, and new common areas and support spaces to accommodate the additional units,[2] pursuant to architectural plans and specifications prepared by D2 Architecture.

Under the contract, Koontz was solely responsible for all aspects of construction, including any acts or omissions by subcontractors engaged by Koontz. The contract also specified that Koontz would provide "Materials and Services" required for the construction, furnishing, or equipment of the project. Further, Koontz would re-execute any portion of the project that failed to conform with contractual requirements and would replace, repair, or restore any portion of the project damaged or injured by defects in Koontz's work or by any part of the work that did not conform to contractual requirements.

In September 2012, Morningside executed a Project Management Agreement (Agreement) with Appellee Project Control of Texas, Inc. Per the Agreement, Project Control would act as project manager "for the purpose of advising, assisting and representing [Morningside] in

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

[2] The new commons and support spaces included a new auditorium/conference center; a new dining venue; an updated spa and wellness center; the expansion of the existing kitchen facility, and the conversion of the existing assisted living building into a memory care facility.

coordinating the efforts of [its] architects, consultants and contractors, project costs, schedules and all other matters relating to the timely and successful completion [of the Overlook Project] . . . ." Project Control also agreed to assist Morningside in "evaluating and obtaining satisfactory performance" by Koontz and all other contractors. The Agreement expressly stated Project Control would have no "*obligation, responsibility or liability* for acts or omissions that are the responsibility of any of the other parties who are providing Services related to [the Project]." (emphasis added).

Construction on The Overlook was substantially completed in 2016. In mid-February of that year, the City of Boerne issued a Certificate of Occupancy. Morningside executed a Certificate of Substantial Completion (Certificate) on March 31, 2016.[3] The Certificate included a punch list identifying 185 items that had yet to be satisfactorily completed, and additional work to be done at an estimated cost of $35,000. The Certificate also specified that additional work, beyond that itemized on the punch list, may still need to be completed: "[t]he failure to include any items on [the punch list] does not alter the responsibility of [Koontz] to complete all Work in accordance with the Contract Documents." The Certificate also confirmed " . . . the date of commencement of warranties for items on the [punch list] will be the date of issuance of the final Certificate of Payment or the date of the final payment."

**B. Chronology: Morningside notice of and investigation into construction issues**

Sometime after the Certificate was executed, Morningside personnel observed, or received complaints from tenants about, several issues at The Overlook, compelling the retention of various consultants to further investigate, as outlined below:

---

[3] "Substantial completion" was defined as "the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the contract documents so [Morningside] can occupy or utilize the work for its intended use."

- Between late February 2017 and mid-March 2019, Morningside personnel observed or received notice of specific issues at various units, including sheetrock damage, roof leaks, PVC leaks, leaks under a sink with a broken pipe, various cracks, a slow drain, a bedroom door that would not close, ceiling bubbles, bubbling paint, and wall puckering.

- March 28, 2019: Jordan Lovelady (former Morningside CFO) and employee Tabitha Cuevas visited the project site. Cuevas took photographs of some of the alleged issues.

- March 29, 2019: Lovelady contacted D2 Architecture to report issues on the project.

- May 1, 2019: Based on visual observations only, the Lundy & Franke structural engineering firm[4] reported several roof leaks in The Overlook's independent living building. The report noted suggested repairs would be "minor and non-structural[.]"

- May 6, 2019: Morningside sent written notice regarding potential claims to its insurer.

- May 23, 2019: Nelson Forensics issued its "Retirement Facility—Preliminary Distress Evaluation" report, noting moisture intrusion, and movement or deflection of the wall and truss framing at The Overlook. The report outlined preliminary opinions regarding potential causes of the damages and recommended additional forensic evaluation.

- Sometime before May 24, 2019: Morningside retained counsel in connection with concerns about construction issues at The Overlook.

- May 24, 2019: Beicker Consultants recommended drywall removal at various locations to observe the wood framing in the walls and ceiling. The report confirmed the "cracking" at multiple locations was cosmetic and did not signal structural distress.

- July 2, 2019: Follow-up reporting by Beicker Consultants confirmed observations of water in the framing; a missing stud at the edge of the sheetrock and a cracked tape joint due to lack of support; no cripple studs above a pocket door (likely causing cracking in unsupported sheetrock); and ponding of water on the roof of one building. The report recommended further consultation with a roofing contractor and again concluded that all cracks were cosmetic and did not indicate structural issues.

- July 22, 2019: Morningside sent an e-mail to Koontz describing various construction issues at The Overlook, including separation of the waterproof membrane from the roof decking in several areas; improper or defective drainage causing ponding and water penetration on the roof; ineffective waterproofing causing water penetration on the balconies; and the necessity of reinforcement of the framing in certain units requiring the removal of existing drywall.

---

[4] Pursuant to their contract with Morningside, Lundy and Franke provided the structural design for The Overlook project.

- August 15, 2019: Morningside sent a formal Notice of Claim for Construction Defects to Koontz. The Notice, which included the "non-exhaustive" list of issues sent less than a month prior, concluded there "are several serious construction defects that need to be resolved." According to Morningside, the letter was sent to preserve its rights in the event any actionable defects were discovered upon further investigation.

- November 27, 2019: Engineering firm Terracon Consultants reported the results of their Preliminary Water Infiltration Study. Findings included several potential water infiltration sources due to gaps, cracks, cuts, open seams, and infiltration through a concrete balcony slab. The report requested authorization for further field testing.

- February 28, 2020: Terracon Consultants relayed results of their visual Building Envelope Assessment, along with recommendations for ten destructive test openings in stucco and five in the masonry cladding to evaluate underlying conditions. The report noted previous PVC pipe breaks consistent with movement observed in the building. According to Terracon, the openings would reveal whether moisture was being retained and whether deterioration had already occurred. The report contained additional recommendations pertaining to the balconies, fenestrations, roofs, and drainage facilities at The Overlook.

- May 14, 2020: SynchroPile's Post-Construction Evaluation report noted extensive sheetrock, mortar and stucco separations because of building movements.

- May 22, 2020: Sparks Engineering, Inc. (SEI) reported results of its Initial Structural Assessment of Balconies at The Overlook. The report recounted various construction defects, including water infiltration and decay, sagging balcony ceiling framing, and cracking in various stucco and stone veneer finishes. Because the visual observations warranted additional evaluation, SEI recommended destructive probes to confirm suspected conditions. The report also recommended that the ceiling framing above a particular unit patio be removed, and that infrared thermography be taken of all exterior walls.

- August 7, 2020: SEI relayed its Limited Probe Investigation results. Twelve locations were selected for five types of probes into the stucco wall assembly—stucco and stone wall veneers, concrete deck-to-stucco wall transitions, concrete deck assembly; and the joist framing at cantilevered balconies. Infrared thermography and moisture measurements were taken at the probe locations to determine locations of water infiltration. Despite at least two weeks of no-rain conditions, the report confirmed elevated moisture in most probes at the wall sheathing, and in the wood sub-decks. In more than half of the locations, the moisture content was measured at well above the normal equilibrium moisture content for exterior sheathing in San Antonio. High moisture contents were also found in the wood sheathing and balcony decking under the concrete at all probe locations. SEI recommended a full vertical replacement of the stucco and of the concrete balcony toppings in the areas of known decay.

Morningside contends SEI's August 2020 findings were its first notice of non-cosmetic, latent structural damages as well as construction that deviated from the architectural specifications. According to Crump, consulting reports received prior to August 2020 were "conflicting," such that Morningside was uncertain whether they "were dealing with something that was cosmetic that would fall more along the lines of warranty work, as opposed to a systemic structural issue in the building . . ."

### C. Morningside suit against Koontz and Project Control

On October 2, 2020, Morningside filed breach of contract, breach of express warranty and negligence claims against Koontz and Project Control stemming from the construction defects at The Overlook.[5] Morningside alleged that, due to Koontz's poor workmanship and/or Project Control's improper project management, the Overlook contained latent construction defects which were undiscoverable absent expert evaluation of the underlying issues. Morningside alleged specific construction defects including: (1) roof issues, including improperly sealed joints and flashings that caused water penetration; (2) deviations from design requirements; (3) non-compliance with geo-technical recommendations concerning exterior grading required to divert water from the foundation; (4) improper or missing sealant around balconies; (5) improper and/or inadequate waterproofing; and (6) missing or improper installation of sealants, waterproofing, weather barriers, drainage mats, window sealants, and exterior wall tie-backs to the wood framing. Regarding the negligence claims, Morningside alleged the construction defects and non-compliance with architectural specifications damaged

---

[5] Morningside additionally brought breach of implied warranty and fraud by non-disclosure claims against Koontz and Project Control, both of which were later dismissed on summary judgment by the trial court. Morningside is not appealing those rulings.

pre-existing areas as well as separate facilities not originally contemplated in the Koontz and Project Control contracts.

Koontz and Project Control asserted the affirmative defense of limitations in their respective Answers. In amended pleadings, Morningside asserted the discovery rule in avoidance of limitations, contending the structural and design deviation defects were "inherently undiscoverable."

### D. Trial court grants summary judgment motions

#### (1) Summary judgment granted to Project Control on negligence claims

Project Control moved for traditional summary judgment, arguing Morningside's negligence claims were barred by the economic loss rule[6] because Morningside did not sustain any extra-contractual damage where the Contract specifically included renovations, updates, expansions, conversions and improvements to pre-existing portions of Morningside's property.

In response, Morningside argued (1) the economic loss rule did not prohibit its negligence claims against Project Control because Morningside's suit alleged property damage as opposed to purely economic loss;[7] and (2) the damage sustained by Morningside was to pre-existing areas *not* contemplated in the Koontz Contract.

---

[6] The economic loss rule generally precludes recovery for tort claims (other than breach of contract) where the economic loss suffered by the plaintiff is already encompassed in the scope of the contract. *See Lamar Homes, Inc. v. Mid-Continent Cas. Co*., 242 S.W.3d 1, 12–13 (Tex. 2007) (confirming economic loss rule "restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence").

[7] *See Belanger v. BAC Home Loans Servicing, L.P*., 839 F.Supp.2d 873, 877 (W.D. Texas—Waco Div. 2011) (citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)) ("When the plaintiff's only harm is an economic loss caused by the defendant's failure to perform a contract, the defendant has breached a contractual duty, not a tortious one.") Thus, to avoid preclusion by the economic loss rule, and to "be entitled to damages for negligence, a party must plead and prove either a personal injury *or property damages as contrasted to mere economic harm*." *See id*. (citing *Express One Int'l v. Steinbeck*, 53 S.W.3d 895, 899 (Tex. App.—Dallas 2001, no pet.)) (emphasis added).

In May 2022, the court granted summary judgment to Project Control on Morningside's negligence claims. The Order included no specific grounds for the ruling.[8]

### (2) Summary judgment granted to Koontz on negligence and breach of express warranty claims

In October 2022, Koontz moved for traditional summary judgment arguing that (1) because the discovery rule did not apply, Morningside's breach of contract and breach of express warranty claims were barred by the applicable four-year limitations period; and (2) Morningside's negligence claims were barred by the economic loss rule. Project Control joined the motion on the breach of contract claims.

Regarding the breach of contract issues, Koontz asserted: (1) the four-year limitations period began on March 31, 2016, when the Certificate was executed because, if any defects existed, they were present that day; (2) because Morningside was aware of the alleged defects "as early as May 2019," a date within the four-year limitations period, the defects could not be *per se* inherently undiscoverable, negating the application of the discovery rule; (3) as of May 2019, when Koontz claimed Morningside first discovered any defects, Morningside still had ten months in which to timely file suit before limitations expired on March 31, 2020; and (4) the discovery rule generally does not apply to breach of contract cases.

On the breach of express warranty claims, Koontz argued: (1) the discovery rule is not applicable to breach of warranty claims where the contract is for the sale of goods, pursuant to the Texas Uniform Commercial Code (UCC); and (2) because the Koontz Contract was a contract for the sale of goods, Morningside failed to timely file its claims within the four-year limitations period instructed by the UCC.

---

[8] Along with traditional summary judgment, Project Control filed a no evidence summary judgment motion on all of Morningside's causes of action, including the negligence claims. The court denied the no-evidence motion.

In response, Morningside contended: (1) the "latent" structural and design deviation defects were not the type of injury ordinarily discoverable either at or soon after project completion despite Morningside's exercise of reasonable care and due diligence (as evidenced by their retention of multiple engineering consultants to investigate and diagnose the issues);[9] (2) for that reason, the defects were "inherently undiscoverable" as a matter of law; (3) because the defects were "inherently undiscoverable," the discovery rule applied to defer the commencement of the limitations period until August 7, 2020, when Morningside first learned of the defects; and (4) where the four-year limitations period was not triggered until August 7, 2020, Morningside's October 2, 2020 suit was timely. Morningside alternatively argued that, with the application of the discovery rule, Koontz's own motion (stating that Morningside discovered the alleged defects "as early as May 1, 2019") demonstrated Morningside's October 2, 2020 suit was timely filed within the limitations periods for breach of contract and breach of express warranty claims. Morningside further asserted that the evidence raised genuine issues of material fact as to when Morningside discovered the defects, meaning Koontz did not meet its statutory burden to negate the application of the discovery rule.

Responding specifically to Koontz's argument about the breach of warranty claims, Morningside stated the UCC's purported non-application of the discovery rule was itself not applicable where the "dominant factor" of the subject construction contract was for *services,* and not for the sale of goods. Finally, Morningside asserted the economic loss rule did not apply to its negligence claims because Morningside alleged damages outside the scope of the Contract.

In February 2023, the court granted summary judgment to Koontz on Morningside's breach of express warranty and negligence claims. The court specifically noted the negligence

---

[9] Morningside claims to have incurred fees of $685,705 to investigate "the nature and cause of the construction defects on the Project . . . ."

claims were barred by the economic loss rule. Summary judgment was denied as to Morningside's breach of contract claims.

### (3) Summary judgment granted on amended motion on breach of contract claims

"Based on additional evidence" allegedly secured during the January 2023 deposition of Crump, Morningside's then-CEO and designated corporate representative, Koontz filed an amended traditional summary judgment motion reiterating its prior arguments that (1) the discovery rule was inapplicable to Morningside's breach of contract claims; and (2) the breach of contract claims were barred by limitations per Crump's alleged testimony, that Morningside discovered the defects in May 2016, well within the four-year limitations period. Project Control also joined this motion.

During his deposition, Crump was asked to review statements in a consulting expert's May 23, 2019 correspondence which indicated Morningside employees Lovelady and Cuevas reported that unnamed Morningside representatives "began observing distress approximately 1.5 months after construction was completed in 2016 . . . ." Crump testified that he had no reason to say those statements were not correct.[10] While neither Crump's testimony nor the consultant's

---

[10] Crump's deposition testimony was amended by an allegedly timely-filed Errata Sheet, included in Morningside's response to Koontz's amended summary judgment motion. Through the Errata Sheet, Crump stated he did not agree with the consultant's use of the word "distress"; and that, because Lovelady was not a Morningside employee in 2016, any "reports" Lovelady may have made to the consultant were speculative.

Supported by the court reporter's Certificate, Morningside objected and moved to strike Koontz's summary judgment reliance on Crump's uncorrected testimony. In turn, Project Control, with Koontz joining, objected to Morningside's objections and moved to strike the court's summary judgment consideration of the allegedly untimely Errata Sheet. The court overruled Morningside's objections to the uncorrected testimony but made no rulings on the motions to strike. For purposes of our review, both the uncorrected testimony and the Errata Sheet were before the court when Koontz's Amended Motion was submitted on the briefs. *See* Tex. R. App. P. 33.1(a)(2)(A); *Bates v. Pecos County*, 546 S.W.3d 277, 285 (Tex. App.—El Paso 2017, no pet.) (confirming, generally, a trial court must either expressly or implicitly rule on an objection to summary judgment evidence for an issue to be preserved for review.); *Trinh v. Campero*, 372 S.W.3d 741, 744–45 (Tex. App.—El Paso 2012, no pet.) (confirming movant's failure to secure written ruling on objections to summary judgment evidence waives issue on appellate review); *Mitchell v. Baylor Univ. Med. Ctr.*, 109 S.W.3d 838, 842 (Tex. App.—Dallas 2003, no pet.) (noting if no order sustaining the objection exists on the record, evidence that has been objected to will remain part of the summary judgment proof); *cf., Well Solutions Inc. v. Stafford*, 32 S.W.3d 313, 317 (Tex. App.—San Antonio 2000, no pet.) (confirming a ruling on

correspondence stated that "1.5 months after construction was completed in 2016" meant 1.5 months after the March 31, 2016 Certificate was executed, the crux of Koontz's amended motion was Crump's alleged admission that Morningside discovered the alleged defects in May 2016.

In its amended motion, Koontz relied on Crump's alleged confirmation that Morningside was aware of "distress" at the Project in May 2016. Koontz also argued Morningside "discovered the alleged construction defects and was fully aware of them as early as May 1, 2019." Yet the amended motion's "Timeline of Relevant Events" lacks any reference to the May 2016 notice; instead, the first "relevant event" listed after the March 31, 2016 Certificate is Morningside's May 1, 2019 receipt of the Lundy & Franke Engineering report.

In response, Morningside reiterated its prior arguments, contending the "latent" structural defects were inherently undiscoverable and, therefore, the discovery rule extended the limitations period, rendering Morningside's October 2020 suit timely. While conceding that it first detected cosmetic cracking in interior drywall and exterior stucco in the Spring of 2019, Morningside argued it was not until August 2020 that it first learned the Project had not been constructed in compliance with architectural specifications, causing damage both to The Overlook and pre-existing facilities, as well as to property outside the original Contract. Procedurally, Morningside again argued that Koontz failed to conclusively negate the application of the discovery rule as required to meet its statutory burden of proof.

In July 2023, the court granted the amended motion, dismissing Morningside's breach of contract claims against Koontz and Project Control with prejudice. A comprehensive final judgment, confirming all prior summary judgment rulings and disposing of all remaining parties and claims, was entered by the court on August 31, 2023.

---

objection to non-movant's summary judgment evidence is not implicit in court's ruling on summary judgment motion).

## II. ISSUES PRESENTED

Morningside appeals the trial court's summary judgment in favor of Koontz and Project Control on the breach of contract and negligence claims, and in favor of Koontz only on the breach of express warranty issue. Specifically, Morningside contends the trial court erred when it apparently found that (1) the alleged construction defects were not inherently undiscoverable and, therefore, the discovery rule did not apply; and (2) because the discovery rule did not apply, Morningside's breach of contract claims against Koontz and Project Control and its breach of express warranty claims against Koontz were barred by limitations.[11] Procedurally, Morningside argues that neither Koontz nor Project Control met their statutory burden in conclusively establishing its limitations defense, which included negating the application of the discovery rule. For that reason, according to Morningside, the requisite burden never shifted, and summary judgment was improper on its breach of contract and breach of express warranty claims.

Alternatively, Morningside argues that (1) there are genuine issues of material fact as to when it actually discovered or, with the exercise of reasonable care and diligence, should have discovered the construction defects; and (2) its ultimate discovery of the defects within four years of the Certificate date does not render the discovery rule inapplicable *per se*. Because the construction defects qualify as the type of injury not likely to be discovered within the prescribed limitations period, Morningside contends the alleged defects should be deemed "inherently undiscoverable" as a matter of law. With the application of the discovery rule, limitations would be deferred until August 7, 2020, rendering Morningside's October 2020 suit timely.

---

[11] Although the trial court did not include specific findings in its Orders granting summary judgment on limitations, it apparently agreed with Koontz and Project Control that the applicable periods began to run on March 31, 2016, the date the Certificate of Substantial Completion was executed by Morningside. On that basis, the four-year limitations periods for Morningside's breach of contract and breach of express warranty claims expired on March 31, 2020.

Morningside also claims the trial court erred when it found that Morningside's negligence claims against Koontz and Project Control were barred by the economic loss rule.[12] According to Morningside, the rule does not apply where the damages claimed exceed the scope of or are unrelated to the contract. Morningside argues Koontz's failure to abide by and Project Control's failure to ensure adherence with the project's architectural specifications damaged certain property in Morningside's pre-existing development which damage exceeded the scope of its contracts with Koontz and Project Control.

Regarding its breach of express warranty claims against Koontz, Morningside contends the trial court erred when it apparently found that the Koontz Contract was a contract for *goods* such that, under Article 2 of the Uniform Commercial Code (UCC),[13] the discovery rule does not apply, and Morningside's claims were barred by limitations. Morningside argues the UCC is inapplicable because the Koontz Contract was either a contract for services rendered or a mixed contract for goods and services; in either scenario, the UCC would not prohibit the application of the discovery rule.

## III. DISCUSSION

### A. Standard of review

We review a trial court's grant of a traditional summary judgment de novo, taking as true all evidence favorable to the non-movant and indulging all reasonable inferences and resolving any doubts in the non-movant's favor. *See B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 279 (Tex. 2017); *Lesieur v. Fryar*, 325 S.W.3d 242, 246 (Tex. App.—San Antonio 2010, pet. denied). We affirm a traditional summary judgment only if the movant established there are no

---

[12] While the trial court specifically stated Morningside's negligence claims against Koontz were barred by the economic loss rule, the order granting summary judgment to Project Control on the same claims stated no grounds.

[13] *See* Tex. Bus. & Com. Code Ann. §§ 2.102, 2.105(a), 2.725.

genuine issues of material fact and it is entitled to judgment as a matter of law on a ground expressly set forth in the motion. *See* Tex. R. Civ. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339 (Tex. 1993) (confirming specific grounds for summary judgment must be expressly presented in motion itself and not in brief or evidence filed contemporaneously).

A defendant moving for traditional summary judgment on the affirmative defense of limitations carries the burden to conclusively establish that defense. Tex. R. Civ. P. 166a(c); *Draughon v. Johnson*, 631 S.W.3d 81, 88 (Tex. 2021). The movant must demonstrate (1) the date upon which the plaintiff's cause of action accrued; and (2) that the plaintiff's suit was filed outside the relevant limitations period. *Levinson Alcoser Associates, L.P. v. El Pistolon II, Ltd.*, 670 S.W.3d 622, 626 (Tex. 2023); *Browne v. City of San Antonio*, No. 04-11-00219-CV, 2012 WL 11756, at *6 (Tex. App.—San Antonio January 4, 2012, pet. denied) (mem. op.) (citing *KPMG Peat Marwick v. Harrison County Housing Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999)). The matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 815–16 (Tex. 2005)).

The movant must also conclusively negate any issues pleaded in avoidance of limitations, such as the discovery rule. *Draughon*, 631 S.W.3d at 85; *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018). To negate the discovery rule, the movant must prove there is no genuine issue of material fact as to when the plaintiff discovered or, in the exercise of reasonable diligence, should have discovered the nature of its injury. *See KPMG*, 988 S.W.2d at 748 (citing *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex. 1990)). Alternatively, the summary judgment movant on limitations grounds may conclusively establish that the discovery rule does not apply. *Schlumberger*, 544 S.W.3d at 834 (citing *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223–24

14

(Tex. 1999)). If the movant fails to negate the discovery rule, the burden does not shift to the non-movant and summary judgment is inappropriate. Tex. R. Civ. P. 166a(c); *Draughon*, 631 S.W.3d at 90; *cf.*, *Rhone-Poulenc*, 997 S.W.2d at 222–23 (confirming the non-movant has no burden to respond to a summary judgment motion unless the movant conclusively establishes its defense). If the movant discharges this burden, the non-movant may defeat summary judgment by presenting competent evidence that raises a fact issue "in avoidance of the statute of limitations." *KPMG Peat Marwick*, 988 S.W.2d at 748.

Where a trial court's order does not specify the grounds for its summary judgment, we affirm the judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) (citing *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996)).

**B.  Discovery rule applies where injury is inherently undiscoverable**

In Texas, the question of when a cause of action accrues and when the statute of limitations commences, is a matter of law for the courts to decide. *See Archer v. Tregellas*, 566 S.W.3d 281, 288 (Tex. 2018) (citing *Provident Life*, 128 S.W.3d at 221). Generally, "a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Provident Life*, 128 S.W.3d at 221. Said another way, the statute of limitations begins to run "when a wrongful act causes some legal injury," regardless of when the plaintiff learns of the injury or if all resulting damages have yet to occur. *See Am. Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427, 430 (Tex. 2015); *Childs v. Haussecker*, 974 S.W.2d 31, 36 (Tex. 1998) (citing *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)). "The resulting limitations period functions to 'compel the exercise of a right of action within a reasonable time.'" *Am. Star Energy*, 457 S.W.3d at 430 (citing *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351

15

(Tex. 1990)); *cf.*, *Gonzalez v. Vantage Bank Texas*, No. 04-21-00285-CV, 2022 WL 14679567, at *3 (Tex. App.—San Antonio October 26, 2022, no pet.) (mem. op.) (citing *Wagner v. Brown, Ltd., v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001)) ("Statutes of limitations are intended to compel plaintiffs to assert their claims within a reasonable period while the evidence is fresh in the minds of the parties and the witnesses.").

The discovery rule is a judicially crafted, limited exception to that principle, deferring accrual of a cause of action until the plaintiff discovers or, through the exercise of reasonable care and diligence, should discover the "nature of [the] injury." *Childs*, 974 S.W.2d at 40 (citing *S.V.*, 933 at 4); *cf.*, *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (explaining courts have "restricted the discovery rule to exceptional cases to avoid defeating the purposes behind the limitations statutes"). "Whether the discovery rule applies in a given context is a question of law." *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 96 (Tex. App.—San Antonio 2003, pet. denied).

Courts apply the discovery rule when "the nature of the injury incurred is inherently undiscoverable and the evidence of the injury is objectively verifiable." *Gonzalez*, 2022 WL 14679567 *4. "These two elements attempt to strike a balance between the policy underlying statutes of limitations (barring stale claims) and the objective of avoiding an unjust result (barring claims that could not be brought within the limitations period)." *Archer*, 566 S.W.3d at 290 (citing *S.V.*, 933 S.W.2d at 3, 6). If either prong is absent, the discovery rule does not apply.[14] *See id.* (citing *S.V.*, 933 S.W.2d at 6–7).

---

[14] The parties have stipulated that the evidence of the "injury" is objectively verifiable; only discoverability is in contention. *See Archer v. Tregellas,* 566 S.W.3d 281, 290 (Tex. 2018).

"An injury is inherently undiscoverable if it is *by nature unlikely* to be discovered within the prescribed limitations period *despite* due *diligence*." *S.V.*, 933 S.W.2d at 7 (citing *Computer Associates*, 918 S.W.2d at 456) (emphasis added)). To fall within that definition, the injury need not be absolutely impossible to discover. *See S.V.*, 933 S.W.2d at 7. Similarly, "inherently undiscoverable" does not mean the plaintiff simply failed to discover the injury within the prescribed statute of limitations. *Id.* The determination of whether an injury is inherently undiscoverable is made on a categorical basis rather than on the facts of the individual case; the focus is on whether the *general type of injury* was discoverable. *See Apex Towing v. Tolin*, 41 S.W.3d 118, 122 (Tex. 2001); *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998). In contrast, an injury is *not* inherently undiscoverable when it is the type of injury that could be discovered through the exercise of reasonable diligence. *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 66 (Tex. 2011) (citing *Wagner & Brown*, 58 S.W.3d at 734–35).

Whether an injury is inherently undiscoverable is a question of law for the court. *Construction Financial Services, Inc. v. Chicago Title Ins. Co.*, No. 04-12-00375-CV, 2013 WL 1846613, at *9 (Tex. App.—San Antonio, May 1, 2013, pet. denied) (mem. op.) (citing *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 355 (5th Cir. 2008)).

## C. Were alleged structural defects inherently undiscoverable?

The four-year statute of limitations governs actions sounding in breach of contract and breach of express warranty. *See* Tex. Civ. Prac. & Rem. Code Ann. 16.004(a); Tex. Bus. & Com. Code Ann. § 2.725(a), (b). On that basis, Koontz and Project Control argue the limitations period was triggered on March 31, 2016, the date the Certificate was executed by Morningside, because, if any defects existed, they existed at the time the construction project was completed. *See Transamerica Ins. Co. v. Housing Authority of City of Victoria*, 669 S.W.2d 818, 823

17

(Tex. App.—Corpus Christi 1984, writ ref'd) (citing *Del Monte Corp. v. Martin*, 574 S.W.2d 597, 599 (Tex. App.—San Antonio 1978, no writ)) (confirming it is "uniformly held that 'substantial completion' of a construction contract is regarded, in legal parlance, as 'full performance'"); *cf.*, *Via Net*, 211 S.W.3d at 314 (citing *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002)) ("It is well-settled law that a breach of contract claim accrues when the contract is breached.").

In support of its position, Koontz correctly notes the Texas Supreme Court's admonition that the discovery rule's application to contract claims "should be rare, as diligent contracting parties should generally discover any breach" within the prescribed limitations period.[15] *Archer*, 566 S.W.3d at 291 (citing *Via Net*, 211 S.W.3d at 314). Because discovery rule jurisprudence focuses on the type of injury rather than the cause of action, however, the Court has not foreclosed that possibility.[16] *See Via Net*, 211 S.W.3d at 314 ("We do not hold today that the discovery rule can never apply to breach of contract claims.").

Challenging Koontz's and Project Control's position is the question of whether the alleged "latent structural" defects at The Overlook categorically qualify as inherently undiscoverable as a matter of law. If yes, the discovery rule applies, deferring the four-year limitations period until

---

[15] Koontz cites three cases confirming the Texas Supreme Court's general reluctance to apply the discovery rule in breach of contract cases. The cases are specifically distinguishable in that the Court found the subject injury could have been "discovered" with the exercise of reasonable care and diligence. *See Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006) (affirming summary judgment on limitations; vendor's failure to name manufacturer as "additional insured" was not inherently undiscoverable where manufacturer, rather than relying on certificate of insurance, could have obtained information by simply requesting copy of subject policy); *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734, 736–37 (Tex. 2001) (affirming summary judgment on limitations; fact that information pertaining to excessive post-production charges could not be gleaned from public records did not mean royalty owners could not alternatively secure information from lessee's partner or gas purchasers); and *HECI Exploration, Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998) (discovery rule did not defer limitations; lessee's failure to notify royalty owners of neighboring well operator's damage to common reservoir was not inherently undiscoverable where owners failed to exercise reasonable diligence in investigating potential drainage or damage).

[16] *See Archer*, 566 S.W.3d at 292, n.10 (in limited holding, the Texas Supreme Court applied discovery rule to right-of-first-refusal holders' breach of mineral rights contract claims; grantor's conveyance of property with no notice to right holders of intent to sell or existence of purchase offer was inherently undiscoverable.).

such time as Morningside actually discovered or, through the exercise of reasonable care and diligence, should have discovered them. Moreover, if the discovery rule is applicable, summary judgment on limitations in the breach of contract and breach of express warranty claims (on non-UCC grounds) constituted error.

In 1943, while affirming a jury verdict, the Texas Supreme Court considered when a homeowner could be charged with notice of an alleged latent construction defect to determine when limitations commenced. *See Ruebeck v. Hunt*, 176 S.W.2d 738 (Tex. 1943). In *Ruebeck*, the plaintiff homeowners experienced and repaired progressively worsening roof leaks for years after settling into their new home in 1930. *Id.* at 739. When the roof was removed in 1938, the homeowners learned for the first time that the materials had not been laid in compliance with the architect's specifications, a material breach of the parties' contract. *Id.* at 738–39. The plaintiffs sued the general contractor and the roofing sub-contractor for fraud and conspiracy exactly four years later. *Id.* at 739. The defendants argued the June 1940 suit was barred by the applicable limitations period, which they claimed had accrued when the home was completed in 1929. *Id.*

To avoid the limitations bar, the homeowners asserted the roof's construction defects had been concealed such that no exercise of reasonable diligence could have discovered the defects until the roof was actually removed. At the conclusion of the trial, the jury verdict included findings that (1) the defendants had failed to cover the roof with the necessary materials for weather exposure; and (2) the plaintiff homeowners not only did not but could not have discovered— despite the exercise of reasonable diligence—the defects until either June 1936 or June 1938, dates which rendered the homeowners' petition timely. *Id.* at 739–40.

In *Gaddis*, the Texas Supreme Court considered "the proper event" to commence limitations when a physician left a surgical sponge inside a patient's body—an error the patient

19

had "no way of knowing [about]" absent surgical intervention. *Gaddis v. Smith*, 417 S.W.2d 577, 580 (Tex. 1967), *superseded by statute*, Professional Liability Insurance for Physicians, Podiatrists, and Hospitals Act of 1975, 65th Leg., R.S., ch. 330, § 1, 1975 Tex. Gen. Laws 864, 865 *as stated in Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex. 1985). Reviewing other jurisdictions' application of the discovery rule, the Court noted a "striking example" in a late 1800s Pennsylvania case. *Gaddis*, 417 S.W.2d at 580 (citing *Lewey v. H.C. Frick Coke Co.*, 31 A. 261 (Pa. 1895)). In *Lewey*, the defendant used tunnels and surface openings into his own property to remove quantities of coal from beneath his neighbor's land. *Id.* The deceived plaintiff had no knowledge, and no "knowledge within his reach," of the larceny taking place beneath his homestead. Had the limitations period run from the date the coal removal began, the plaintiff's action would have been barred. Instead, the Pennsylvania court permitted the deferral of limitations until the plaintiff actually knew of, or could have reasonably discovered the trespass, noting:

> To require an owner, under such circumstances, to take notice of a trespass upon his underlying coal at the time it takes place, is to require an impossibility; and *to hold that the statute begins to run at the date of the trespass . . . take[s] away the remedy of the injured party before he can know that an injury has been done him.* A result so absurd and so unjust ought not to be possible.

*Id.* (quoting *Lewey*, 31 A. at 263) (emphasis added*)*; *cf.*, *Archer*, 566 S.W.3d at 292 (confirming those considerations which favor the application of the discovery rule include "ensuring claims are not barred before a party even knows he is injured . . . .").

In 2007, our sister court considered the application of the discovery rule in a more contemporary construction design scenario. *See Kizer v. Meyer, Lytton, Alen & Whitaker, Inc.*, 228 S.W.3d 384, 389 (Tex. App.—Austin 2007, no pet.). In *Kizer*, a homeowner sued MLAW, a structural engineering firm, for negligence and breach of contract stemming from the firm's design of the home's foundation. *Id.* at 386–87. After being retained in 1988, MLAW

20

recommended using individual concrete slabs in the foundation to account for the soil composition's tendency to shift. *Id.* Once MLAW constructed the recommended foundation, the homeowner engaged another company to install flooring. Thereafter, the homeowner noticed the tile flooring was cracking along the pattern of joints in the underlying concrete slabs. After consulting with another engineer, the homeowner concluded the cracking resulted from MLAW's failure to design an intervening "capping slab" to insulate the tiles from the motion of the concrete slabs beneath. Later, in 2004, the homeowner discovered large cracks in the exterior of his home. Yet another consulting engineer advised the foundation's design defects went beyond just the missing "capping slab"; they were at variance with industry standards. On that basis (and leaving out some procedural complications not relevant here), the homeowner sued MLAW for negligence and breach of contract. MLAW moved for summary judgment, arguing the suit was barred by the applicable two-year and four-year statutes of limitations. The trial court granted the motions.

On appeal, the Austin appellate court considered the parties' dispute as to when the limitations periods relating to the structural defects began. MLAW claimed the limitations periods commenced when the homeowner accepted the firm's design and construction of the foundation. The homeowner, relying on the discovery rule, argued the limitations period was deferred until 2004 when he first discovered the "distinct injury" of the structural failure of the foundation itself. Comparing another construction case in which it had upheld the application of the discovery rule, the Court noted the disadvantage of "ordinary laypersons" in detecting construction defects. *Id.* at 389 (citing *Thomson v. Espey Huston & Assocs.*, 899 S.W.2d 415, 423 (Tex. App.—Austin 1995, no writ)) (confirming discovery rule applied where real estate developer could not detect drainage system design defects until "flooding . . . and damage to the buildings became manifest"). On that

21

basis, the *Kizer* court found the discovery rule applied as a matter of law to the homeowner's issues with the design of his home's foundation.[17] *Id.*

Only a month before oral argument in this case, the Fourteenth Court of Appeals also addressed the application of the discovery rule in a construction case. *Holiday Inn Club Vacations, Inc. v. CBRE, Inc.*, No. 14-23-00976-CV, 2025 WL 383161 (Tex. App.—Houston [14th Dist.] Feb. 4, 2025, pet. filed). The facts in that case closely resemble those in ours. The defendant, CBRE, oversaw and managed the construction of a resort now owned by Holiday Inn. *Id.* at *1. During construction, there was water penetration in a majority of the areas tested, but after repairs, the windows passed testing. *Id.* The certificate of occupancy was issued in 2016, but beginning in 2019, Holiday Inn noticed water intrusion. *Id.* A report in 2020 attributed the issues to defective work. *Id.* In October 2020, Holiday Inn sued CBRE, which filed third party claims against the general contractor and construction administrator. *Id.* at *2. CBRE claimed that the claims accrued on May 31, 2016, when its contract was terminated and so were barred by the statute of limitations. *Id.* at *7. Like here, the issue before the court was whether the injuries were inherently undiscoverable so that the discovery rule applied and tolled the statute of limitations. The court, after citing several cases which "have stated that the discovery rule applies in cases involving claims based on allegedly faulty construction," held that "CBRE did not establish, as a matter of law, that the discovery rule is inapplicable to Holiday Inn's claims." *Id.* (citing *S.V.*, 933 S.W.2d at 6–7; *J.M. Krupar Constr. Co. v. Rosenberg*, 95 S.W.3d 322, 329–30 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Bayou Bend Towers Council of Co-Owners v. Manhattan Constr. Co.*, 866 S.W.2d 740, 742–43 (Tex. App.—Houston [14th Dist.] 1993, writ denied); *Dallas Mkt. Ctr.*

---

[17] While the Austin appellate court applied the discovery rule, it applied it as of 2001 (not as of 2004 as the homeowner had argued), the date upon which the homeowner first admitted difficulties with the foundation. *See Kizer v. Meyer, Lytton, Alen & Whitaker, Inc.*, 288 S.W.3d 384, 390 (Tex. App.—Austin 2007, no pet.).

*Hotel Co. v. Beran & Shelmire*, 865 S.W.2d 145, 147 (Tex. App.—Corpus Christi 1993, writ denied).

The "common thread" connecting those cases in which the Texas Supreme Court has deemed an injury "inherently undiscoverable" and, therefore, applied the discovery rule, is a finding that the wrong and the injury were either unknown or very difficult to ascertain because of their very nature and not because of any fault of the plaintiff. *See S.V.*, 933 S.W.2d at 7; *see also, e.g.*, *Willis v. Maverick*, 760 S.W.2d 642, 645–46 (Tex. 1988) (applying discovery rule to legal malpractice case because client unable to detect misapplication of the law); *Kelley v. Rinkle*, 532 S.W.2d 947, 949 (Tex. 1976) (applying rule where false credit report could not be discovered until credit denied); *Gaddis*, 417 S.W.2d at 578, 580 (applying rule because it is difficult, if not impossible, to discover foreign object left within one's body post-surgery); *cf.*, *Construction Financial Services, Inc.*, 2013 WL 1846613, at *10, *12 (citing *Vanderbilt Morg. & Fin., Inc. v. Flores*, 747 F.Supp.2d 794 (S.D. Tex. 2010)) (applying discovery rule where well-established title company filed deed of trust in wrong county; due diligence did not require plaintiff to consult county deed records to determine deed was *not* filed).

Among other defects, Morningside alleges improper construction outside the architectural specifications, systemic structural issues, deviations from design requirements, and non-compliance with geo-technical recommendations concerning exterior grading. These allegations are consistent with the "common thread" favoring the application of the discovery rule. Because of the very nature of the defects, the wrong and the injury were unknown to Morningside—and not due to any fault on its part. *See S.V.*, 933 S.W.2d at 7; *cf.*, *Dallas Market Center Hotel Co. v. Beran & Shelmire*, 865 S.W.2d 145, 147 (Tex. App.—Corpus Christi 1993, writ denied) (noting policy considerations underlying discovery rule application are present in construction context

23

where "aggrieved party frequently does not discover an injury until months or years after construction is completed"). Indeed, Morningside represents the proverbial disadvantage of "ordinary laypersons" where, until engineers recommended and conducted destructive testing, no exercise of reasonable diligence would have detected the structural defects and, more especially, the design deviations and failure to abide by architectural specifications. *See Kizer*, 228 S.W.3d at 389 (citing *Thomson*, 899 S.W.2d at 423); *see also Holiday Inn Club*, 2025 WL 383161, at * 9 (reversing summary judgment on limitations grounds; discovery rule applied where alleged faulty construction resulting in water intrusion and other damages was inherently undiscoverable).

Considering the nature of the alleged structural and design deviation defects, and balancing the appropriate policy considerations, we conclude the discovery rule applies to defer the limitations period until Morningside knew or should have known of the injury. *See Archer*, 566 S.W.3d at 291. *Apex*, 41 S.W.3d at 122; *Childs*, 974 S.W.2d at 38 (noting "[a] latent injury . . . is the epitome of the type of injury that is often inherently undiscoverable within the applicable limitations period").

Morningside's point of error contending the alleged construction defects qualified as "inherently undiscoverable" and that, therefore, the discovery rule is applicable, is sustained.

### D. Koontz and Project control failed to conclusively negate discovery rule

We agree with Morningside that neither Koontz nor Project Control met their summary judgment burden to conclusively negate the application of the discovery rule as to limitations on the breach of contract and breach of express warranty claims. *See Rhone-Poulenc*, 997 S.W.2d at 222–23 (confirming non-movant bears no burden to present controverting evidence unless and until summary judgment movant conclusively establishes its right to judgment as a matter of law); *Burns*, 786 S.W.2d at 267–68 (reversing summary judgment where material fact issue existed as

to when legal malpractice was discovered, or should have been discovered in exercise of reasonable diligence). To establish their limitations defense, Koontz and Project Control were required to: (1) conclusively demonstrate when the cause of action accrued; and (2) negate the discovery rule by proving there is no genuine issue of material fact about when Morningside discovered, or in the exercise of reasonable diligence, should have discovered the "nature" of the construction defects. *See Gonzalez*, 2022 WL 14679567, at *3 (citing *KPMG*, 988 S.W.2d at 748).

We note that the trial court initially denied Koontz's (and Project Control's) summary judgment motion based on limitations. Thus, because the amended motion contained precisely the same arguments, it appears the trial court found Crump's alleged confirmation that Morningside was aware of the "distress" in May 2016 determinative. However, the "May 1, 2016" date is neither in the consultant's correspondence nor in Crump's deposition testimony. Koontz and Project Control's argument required that the trial court presume that the phrase "1.5 months after construction was completed" means 1.5 months after the certificate of completion was executed on March 31, 2016. But these words were written by a lay-person. By "completed," they could have meant the certificate of completion, or they could have meant once everything on the punch list that remained after the certificate was completed. One would have to speculate. "Speculative and conclusory testimony, by experts and lay witnesses alike, is incompetent and cannot support or defeat summary judgment." *Raoger Corp. v. Myers*, No. 23-0662, 2025 WL 1085173, at *4 (Tex. Apr. 11, 2025). Additionally, even if Morningside was aware of "distress" in May 2016, Koontz and Project Control were still required to conclusively establish that that distress was caused by the same water penetration issues which are the basis of this suit. They have failed to make that connection. *Holiday Inn Club*, 2025 WL 383161, at * 9 ("[E]vidence of some isolated defects would not establish conclusively the date the claim accrued.").

Koontz's amended motion (joined by Project Control) references *several* dates on which or by which Morningside "discovered" the injury, including "as early as 1.5 months after completion of construction in 2016," "as early as May 2016," "May 15, 2016," "as early as 2016," "as early as 2017," "Spring 2019," "May 1, 2019," "as early as May 2019," "July 2nd, 2019," "August 15th, 2019," and "February 28, 2020."[18] With the exception of the disputed May 2016 dates, the designation of any of those dates as "the" date upon which Morningside was aware of the defects would render Morningside's October 2020 suit timely filed *if the discovery rule applies.* Even if Crump's uncorrected deposition testimony constituted competent evidence that Morningside had notice of the defects "sometime in 2016," that nebulous reference alone would not render the October 2020 suit untimely. On its face, Koontz's amended motion listing a series of alternative "discovery" timelines and reliance on Crump's ambiguous deposition testimony present genuine issues of material fact as to when Morningside could be charged with discovering the nature of the defects and, consequently, when the limitations period began.

Where Morningside filed suit on October 2, 2020, it was incumbent upon Koontz and Project Control to *conclusively* demonstrate that Morningside knew or, through the exercise of reasonable care and diligence, should have known of the "nature" of the alleged structural defects on a particular date earlier than October 2, 2016. *See Childs*, 974 S.W.2d at 40 (citing *S.V.*, 933 S.W.2d at 4). This they failed to do. That failure means both that Morningside had no duty to

---

[18] Koontz and Project Control listed this series of dates in support of their arguments that (1) because Morningside "discovered" the injury within the four-year statute of limitations, the discovery rule did not apply; and (2) as of any of these timelines, Morningside had sufficient time to timely file suit before March 31, 2020, the date upon which Koontz and Project Control contend limitations expired. Koontz's and Project Control's initial argument, however, is mistaken: the discovery within the originally prescribed limitations period does not mean the injury is not inherently undiscoverable *per se*. *See Gonzalez v. Vantage Bank Texas*, No. 04-21-00285-CV, 2022 WL 14679567, at *4 (Tex. App.—San Antonio October 26, 2022, no pet.) (mem. op.) ("Inherently undiscoverable does not mean that a particular plaintiff [did or] did not discover his or her particular injury within the applicable limitations period."). In other words, when the discovery rule applies, the statute of limitations runs from the date the injury is discovered, even if it is discovered within the state of limitations.

respond (let alone controvert the evidence presented) and that summary judgment was improper. Tex. R. Civ. P. 166a(c); *see Draughon*, 631 S.W.3d at 88; *Rhone-Poulenc*, 997 S.W.2d at 222–23.

While the question of whether the discovery rule applies is a question of law, the question of when the plaintiff discovered, or should have discovered, the alleged injury is for the jury. *See Childs*, 974 S.W.2d at 44. Here, where reasonable minds could differ about the conclusion to be drawn from the evidence in the record regarding when Morningside discovered, or should have discovered, the alleged injury confirms the discovery rule was not negated, rendering summary judgment inappropriate. *Id.* (citing *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 n.2 (Tex. 1988)).

Morningside's point of error contending the trial court erred in granting summary judgment to Koontz and Project Control on the breach of contract claims (and the breach of express warranty claims to Koontz on non-UCC grounds) is sustained.

### E. Koontz failure to meet summary judgment burden on Morningside's negligence claims

The trial court's grant of summary judgment to Koontz on Morningside's negligence allegations specifically states the claims were barred by the economic loss rule. The question of whether the economic loss rule bars a tort claim is a question of law which we review de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)

The economic loss rule generally precludes recovery for tort claims where the economic loss suffered by the plaintiff is already encompassed in the scope of the contract. *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12–13 (Tex. 2007) (confirming economic loss rule "restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence"). "When the injury is only the economic loss to the subject of [the]

27

contract itself, the action sounds in contract alone." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). The rule, however, does not preclude all tort claims arising out of a contractual setting. *Chapman Custom Homes, Inc. v. Dallas Plumbing Co*., 445 S.W.3d 716, 718 (Tex. 2014); *cf.*, *Barzoukas v. Found. Design, Ltd.*, 363 S.W.3d 829, 838 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (citing *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418–21 (Tex. 2011)) *(*noting "the mere presence of contracts in the general vicinity of a construction dispute does not justify indiscriminate invocation of the economic loss rule"); *Thomson*, 899 S.W.2d at 420 (explaining "the mere fact that an act is done pursuant to a contract does not shield it from the general rules of tort liability").

In support of its argument that Morningside's damages were encompassed in the contract, Koontz asserted that the contract already contemplated renovations, updates, expansions, conversions and improvements to pre-existing areas. In response, Morningside asserted that its negligence allegations were not just a "repackaged" breach of contract claim. Instead, based upon alleged damages to *other* pre-existing structures in its Menger Springs development—property never contemplated in the Koontz Contract, Morningside contends its damages are extra-contractual and, therefore, fall outside the scope of the economic loss rule.[19] *See Thomson*, 899 S.W.2d at 421–22 (reversing summary judgment; "to the extent that the alleged inadequacies caused damage to parts of the property beyond [the scope of the engineering firm's] contract, [the plaintiff] also has a tort claim")

To conclusively demonstrate that the economic loss rule precluded Morningside's negligence claims, Koontz was required to present competent evidence establishing that Morningside's alleged damages corresponded with applicable contract provisions describing both

---

[19] For example, Morningside's Third Amended Petition alleges "deviations from the design requirements."

the "new" construction and/or improvements to "pre-existing" areas. Other than general conclusions, however, Koontz's motion is devoid of the requisite proof. *See Wallace v. Texas Tech University*, 80 F.3d 1042, 1047 (5th Cir. 1996) (pleadings do not constitute competent summary judgment evidence); *Laidlaw Waste Systems (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995) (factual allegations in pleadings are not summary judgment evidence). Because Koontz failed to meet its summary judgment burden, summary judgment was improper. *See* Tex. R. Civ. P. 166a(c*)*; *Rhone-Poulenc*, 997 S.W.2d at 222–23.

The portion of Morningside's second point of error that the trial court erred in granting summary judgment to Koontz on Morningside's negligence claims is sustained.

### F.   Summary judgment in favor of Project Control on negligence claims

The trial court also granted summary judgment to Project Control on Morningside's negligence claims; however, its order identified no grounds. As in Koontz's motion, Project Control argued that, because the Contract contained provisions describing work to "pre-existing areas," Morningside's alleged damages could not be "extra-contractual" and were, therefore, precluded by the economic loss rule. For the same reasons stated above, Project Control's conclusory arguments were insufficient to conclusively demonstrate that Morningside's alleged damages were encompassed by the scope of the contract. Because Project Control failed to meet its requisite burden, summary judgment was inappropriate. *See $8000.00 in United States Currency v. State*, No. 04-22-00672-CV, 2023 WL 5072603, at *2 (Tex. App.—San Antonio August 9, 2023, no pet.) (citing *Rhone-Poulenc*, 997 S.W.2d at 222–23) (summary judgment non-movant bears no burden to present controverting evidence unless and until movant conclusively establishes its right to judgment as a matter of law).

The portion of Morningside's second point of error that the trial court erred in granting summary judgment to Project Control on the negligence claims is sustained.

## G. Koontz failed to meet its summary judgment burden on breach of express warranty claims

The trial court's grant of summary judgment to Koontz on Morningside's breach of warranty claims contains no grounds for its ruling.[20] Koontz generally argued that the discovery rule did not apply because the Contract was a contract "for the sale of *goods*" under the UCC; thus, Morningside's breach of express warranty claims were barred by the four-year limitations period. *See* Tex. Bus. & Com. Code Ann. § 2.725(a), (b) (stating an action for breach of warranty, pertaining to a contract for the sale of goods, must be brought within four years of the tender of delivery). In response, Morningside contended the Contract's actual or predominant subject matter—the construction of buildings and related support spaces for The Overlook—did not pertain to the sale of goods or materials, negating the application of the UCC. *See Hunsberger v. Physician Life Care Planning, LLC*, No. 04-20-00243-CV, 2021 WL 3057509, at \*5 n.3 (Tex. App.—San Antonio July 21, 2021, no pet.) (mem. op.) (citing *Jonibach Mgmt. Tr. v. Wartburg Enters., Inc.*, 136 F.Supp.3d 792, 810 (S.D. Tex. 2015)) (UCC applies only if the sale of goods is the "dominant factor" or constitutes the "essence of the transaction.").

Koontz provides no authority in support of its position that a factually similar construction contract is a contract "for the sale of goods" under the UCC.[21] On that basis, we find Koontz's conclusory description of the Contract as a "contract for the sale of goods" insufficient to carry

---

[20] Koontz alternatively argued that, even if the Contract was not "for the sale of goods" rendering the UCC inapplicable, Morningside's breach of warranty claims were barred by limitations because Morningside discovered the injury within the four-year limitations period. Having already concluded the discovery rule applies, we only consider whether the trial court could have properly granted summary judgment based on Koontz's UCC argument.

[21] Koontz cites to *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544 (Tex. 1986) in support of its position that the Contract was a "contract for the sale of goods" as defined by the UCC. *See* Tex. Bus. & Com. Code Ann. §§ 2.102, 2.105(a), 2.725. *Safeway* is inapplicable, however, because the subject contract exclusively involved the sale of roofing materials. *See Safeway*, 710 S.W.2d at 545.

its requisite burden and summary judgment was inappropriate. *See* Tex. R. Civ. P. 166a(c); *Rhone-Poulenc*, 997 S.W.2d at 222–23.

Morningside's point of error contending the trial court erred when it granted summary judgment to Koontz on Morningside's breach of warranty claims under the UCC is sustained.

## V. CONCLUSION

The trial court erred in granting summary judgments to Koontz and Project Control. We reverse and remand for further proceedings in accordance with this Court's opinion.

MARIA SALAS MENDOZA, Chief Justice

May 27, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.